SALLY P. MURRAY, *Complainant, versus* LAURENS J. JOYCE.

It was the purpose of the statute of 1856 in relation to witnesses, to enlarge the sources of evidence in all those cases to which it was intended to apply, by removing the legal restrictions *then existing* upon the rights of parties to give testimony in their own suits; and it applies to suits where but one party can be a witness.

The preliminary conditions required of the complainant by the statute relating to the maintenance of bastard children, are not removed by the statute of 1856, and the respondent is made a competent witness thereby; the second section of that statute being limited in its application to such parties as were made witnesses by the first.

This was a COMPLAINT under the Bastardy Act, and comes before the court on EXCEPTIONS to the ruling of GOODE-NOW, J.

The examination of the complainant was held and taken

Murray *v.* Joyce.

before the Municipal Court at Brunswick, on the 8th day of September, 1854.

The declaration was duly filed.

The complainant was introduced, and testified, among other things, that she was ˙on the ninth day of April, 1853, confined of a male bastard child; that said child was begotten by Laurens J. Joyce, in the month of July or August, 1852.

The defendant was offered to testify, and was objected to by the complainant's counsel, but the objection was overruled, and he was allowed to testify.

Among other things, said defendant testified that he never had illicit connection with the complainant, at any time nor at any place; that he heard the statements made by her on her examination here; that his denial covered all her charges of improper intercourse between them; that he was not the father of her bastard child; that he knew he was not; that he never attempted to have any connection with her at any time or place.

The verdict was for the defendant.

To the rulings of the court admitting the defendant as a witness, the complainant excepted.

*Shepley & Dana,* counsel for the complainant.

The proceedings under the Bastardy Act remain unaffected by the act of 1856, in relation to witnesses, and this act cannot be made to apply to proceedings under the Bastardy Act.

The position of the respondent, as an incompetent witness, must therefore remain the same.

Under the Bastardy Act, which still remains upon our statute books unaltered, it is necessary that the complainant should make her accusation upon oath before delivery, repeat the same during the time of her travail, and continue constant in her accusation of the same person as the father of her child; under these restrictions, and only then, she is

entitled to become a witness in the trial of the cause; but if we regard the act of 1856 as applying to proceedings under this act, this could not be. The complainant would be inadmissible as a witness, until after the defendant had offered himself as such. Here, then, she is at once allowed the privilege and refused it. This is plainly a *reductio ad absurdum;* its fallacy is clear upon the very face; for if this position were correct, no complaint could be entered and no action could possibly be brought under the Bastardy Act; it would indeed be virtually repealed, and an injured woman could then have no remedy for her wrong, and the town no protection against its liability to support bastard paupers.

But then if the act of 1856 is not designed to apply to the complainant in these proceedings, as it clearly is not, how then can it be held applicable to the respondent, and to give him alone the benefit of its provisions?

This position, we think, will be found wholly untenable. In ordinary cases, if the defendant chooses to offer himself as a witness, then the plaintiff is also entitled to an examination; but in this case the circumstances are from their very nature essentially different. The complainant is the only *real witness*, and must necessarily first come in, in order to make out a case. Here then the reason for the new law ceases, and the well known maxim, *ratione cessante cessat lex*, applies.

The act too must be taken as one and entire, complete in itself, and it is evident that if held applicable to the respondent, it must clearly be so in regard to the complainant; but this we have shown to be absurd; it is not applicable to her, and cannot then be forced to apply to the respondent; the application must be the same in regard to both; it is unique, entire, and cannot be separated.

It is clear, then, that the Bastardy Act is not, (as it was not intended to be,) affected by the act of 1856; and that proceedings under it are to be conducted as they always have been, and controlled by the same rules; if it were oth-

Murray *v.* Joyce.

erwise, the legislature would have expressed it by an additional section; but as it is, they have left it designedly untouched.

Nor should the exclusion of the respondent be considered as a hardship upon him. There is no reason why he should be entitled to any more or greater privileges than he had before the passage of the new act.

It must be remembered that the oath taken by the complainant is taken under a more than usually solemn sanction; it is taken not merely under the pains and penalties of perjury, but in view of impending, perhaps immediate, death, almost before the awful presence of her God, during the pains and dangers of childbirth. Few, if any, women will be found so hardened, so depraved, as to perjure themselves in such an awful moment. With the respondent, however, the case is far different; if admitted, it is merely under the ordinary sanction of an oath. He is before the court charged with the crime of adultery. Is it unnatural to believe that he would rather be guilty of perjury, and have the knowledge of that guilt confined within his own breast, than to be adjudged in open court the father of a bastard child, and become at once the object of aversion and public scorn?

The disgrace attached to either position is far from enviable, and not a few would be found who would prefer to be guilty of perjury, satisfied that he would escape any public prosecution or conviction of his guilt, than to suffer the dishonor of being adjudged an adulterer, and becoming an object of public shame. Here then the barrier interposed for the protection of injured parties is entirely broken down, the sanction of the oath virtually dissolved, and the complainant is deprived of her just remedy. The hardship of such an application of the new act ought to be sufficient to satisfy us that it cannot be held to apply to proceedings under this process.

The object of it was to promote the ends of justice, and a forced application of it cannot be made to cases like the present, where its effect is obviously to defeat this very end.

*W. G. Barrows*, counsel for the defendant.

1. A bastardy process is "a civil suit or proceeding at law," having all the essential incidents of other civil proceedings. The defendant's bond runs to the complainant, and she can settle the claim as she pleases, unless the selectmen of the town interfere, by virtue of the statute provision. The pleadings are in writing—the verdict of the jury is in writing. The jury are not specially empanneled to try the case, and the personal presence of the defendant at the time of the trial is not necessary. Depositions are held admissible without any specific statute provision, and costs are allowed to the prevailing party. *Eaton* v. *Elliot*, 28 Maine R., 438, 439, and cases there cited.

2. By statutes of 1856, ch. 266, s. 1, it is enacted that no person shall be *excused* or excluded from being a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the suit as party or otherwise, except as thereinafter provided.

3. Section 2d of the same chapter nowhere prohibits the defendant from offering himself as a witness, in a case where the cause of action implies an offence against the criminal law, on the part of the defendant, but on the contrary expressly recognizes his right so to do. And the true intent of that section is to prevent his being required by the opposite party, under section 1, to criminate himself, and the right construction of the 2d section does not exclude the testimony of those who are made witnesses by virtue of some other statute or any well settled principle of the common law, the design of the statute being to enlarge and not to restrict the sources of evidence.

By way of illustration, in case of the theft of a casket, the contents of which are known only to the owner, and the theft being proved by other witnesses, would not the owner now be admissible to prove the contents of the casket *ex necessitate*, as in the case of *Herman* v. *Drinkwater*, 1 Maine R., 29? The error is in supposing that the parties to suits are admissible now *only* by virtue of this statute. We contend

that the rights of those parties who were previously admissible remain unaltered, and the door is opened wider for the admission of others. *Jackson* v. *Collins*, 3 Corwin R., 89; *Wilkinson* v. *Leland*, 2 Peters R., 662; *Holbrook* v. *Holbrook*, 1 Pick. R., 248; *Henry* v. *Tilson*, 17 Verm. R., 479; *Crocker* v. *Crane*, 21 Wend. R., 211; *Morris* v. *Delaware and Schuylkill Canal*, 4 Watts & Seargent R., 461.

4. A case of this description is the very one, of all the different classes of cases, to test the wisdom of the principle upon which the statute is founded. The facts are peculiarly within the knowledge of the parties. The necessity for such a statute is not apparent in suits where all the transactions pass under the eye of persons not immediately interested. The theory of the statute is, that truth can be best extracted from the testimony of those who must necessarily know all there is to be known about the case. Where can a better opportunity be found to test its correctness than in a case like this? *Winslow* v. *Kimball*, 25 Maine R., 495; *Allen* v. *Parish*, 3 Ham, 198, given in the U. S. Digest, vol. 3, p. 484, s. 64; *Sch. Harriet*, 1 Story, 257; *Beals* v. *Hale*, 4 Howard R., 37; *Brown* v. *Wright*, 1 Greenl. R., 240; *Scott* v. *Searles*, 1 Smedes & Marshall R., 590.

5. In subsequent sections of the statute, ss. 3 and 6, the legislature have carefully specified certain cases to which they did *not* intend the statute should apply, and the inference is strong, taken in connection with the comprehensive language used in s. 1, that they contemplated its application in all cases not expressly excluded.

MAY, J. In civil suits by the common law, not only the parties, but all others having a certain and direct interest in the event of the suit, however small, were excluded from testifying. This rigid rule of the common law has been, from time to time, very much relaxed by legislation in this and some other states. So also in England. In this state it has been entirely repealed. Whether such legislation, to the extent to which it has been carried, is wise or unwise, is not

a question which we are called upon to determine. At the trial of this case, the respondent was admitted as a witness, against the objection of the complainant, and the question now presented is, whether such admission was authorized by law; and the answer depends wholly upon the construction of our statutes.

By the statute of 1855, ch. 181, all legal objection to the competency of witnesses, arising from interest in the event of the action, was removed in most cases; and it was further provided by the statute of 1856, ch. 266, s. 1, that "no person shall be excused or excluded from being a witness in *any* civil suit, or proceeding at law or in equity, by reason of his interest in the event of the same, as party, or otherwise," except as is thereinafter provided. Does this provision, by a true construction, allow the respondent to a process under the Bastardy Act, R. S., ch. 131, to be a witness? Does the language used fairly embrace such a case?

To say nothing of the other phraseology used in the first section of the statute of 1856, the words, "any civil suit," must be regarded as embracing such proceedings. In the case of *Wilbur* v. *Crane*, 13 Pick. R., 284, where it was contended, under a statute similar to ours, that the proceedings were in some respects in the form of a criminal prosecution, the court say, "we consider the form of the process immaterial; the suit is in substance and effect a civil suit, as much so as it would have been, if the remedy provided had been a special action on the case." In this state also such proceedings have, by judicial construction, been held to fall within the provisions of statutes relating to civil suits. They have all the essential characteristics of such suits. *Eaton* v. *Elliot*, 28 Maine R., 436; *Mahoney* v. *Crowley*, 36 Maine R., 486; *Smith* v. *Lint*, 37 Maine R., 546.

In view of these decisions, it is to be presumed that the legislature intended to include in the language used by them, all such cases as had before been determined by this court to fall within the meaning of the terms they employed.

It was obviously the purpose of this statute to enlarge

Murray *v.* Joyce.

and not to restrict the sources of evidence in all those cases to which it was intended to apply, by removing the legal restrictions *then existing* upon the rights of parties to give testimony in their own suits.   There was no necessity for such a statute in cases where such right existed before.   It applies to suits in which but one party, from the very nature of the case, can be a witness, as where one party is a corporation and the other not.   It applies also to cases in which, by the statutes then in force, or by the common law, one party had the right to give testimony, and the other not. This statute was not intended, in any way, to affect such existing rights, but only to confer the right where it did not previously exist.   By it, the statutes conferring such rights were not repealed; nor do we think that the preliminary conditions required of the complainant by the statute relating to the maintenance of bastard children, before cited, are removed.   If such had been the intention of the legislature in regard to a provision in the statute, so important in its nature to the rights of the respondent, we cannot doubt but that there would have been some direct reference to the fact, or some language used in the repealing statute unequivocally expressive of such intention.   While, therefore, the rights of the complainant remain as they were before the passage of this statute, we are fully satisfied that by virtue of the language used in the first section, the respondent is made a competent witness, unless excluded by some of the subsequent provisions of the act.   This is not pretended by the able counsel for the complainant.

It is, however, contended, that the provisions of the second section of this statute are of such a nature as to show clearly that the legislature could not have intended that the first section should be applied to either of the parties under the Bastardy Act, because it is said that if it applies to one party, it applies to both, and that such application effectually puts it in the power of the respondent to defeat the whole beneficial operation of that statute.   If this were so, it would deserve grave consideration, whether the statute would not

bear some reasonable construction that would avoid such effect. Notwithstanding the able and ingenious argument of the counsel for the complainant, we are not satisfied that any such consequences will result. By the construction which we give to the act, they are avoided.

The second section provides, that "parties shall not be witnesses in suits where the cause of action implies an offence against the criminal law, on the part of the defendant, unless the defendant shall offer himself as a witness, in which case the plaintiff may also be a witness."

It is urged, that, by the very terms of this section, if the respondent is admissible as a witness, then the complainant is to be excluded, unless the respondent first offer himself, because the suit by implication charges him with a criminal offence; and it cannot be denied but that a literal construction of the language might have this effect. That the cause of action in proceedings under the Bastardy Act implies an offence against the criminal law, on the part of the defendant, is certain. It equally implies an offence on the part of the complainant. No such prosecution can be sustained without proof of the guilt of both. The language of the statute does not necessarily designate a case where both parties are *in pari delicto* as to the offence implied; and there would seem to be no reason in such a case, why the right of one party to elect to be a witness should attach any more to one party than to the other; nor why the right of either party should be made to depend upon the election of the other.

It is also true that the construction of this second section which is contended for, would be a virtual repeal of the Bastardy Act, by putting the maintenance of any prosecution under it wholly at the will of the respondent. Under that statute it has been fully settled, that no prosecution can be sustained unless the party seeking to avail herself of the remedy which it affords, proves all the facts necessary to bring her case within the statute, among which is the fact that the mother accused the putative father, during the pains

of parturition, with being the father of the child. If this is not done, the respondent must be acquitted, however strong may be the proof of his guilt. He is entitled to the testimony of the mother, who alone, in ordinary cases, can know with certainty the paternity of her child. Her testimony is, therefore, indispensable to the maintenance of the suit. *Loring* v. *O'Donnell*, 12 Maine R., 27; *Stiles* v. *Eastman*, 21 Pick. R., 132; *Blake* v. *Jenkins*, 34 Maine R., 237. But this consideration, instead of being a reason why the first section of the statute should not be applied to make the respondent a witness, affords a stronger reason why the second section should not be so construed as to prevent the complainant from being a witness, except at the will of the respondent, if any other reasonable construction can be found. We think such reasonable construction sufficiently appears, when we look at the primary purposes of the act. We are, therefore, brought to the conclusion, that inasmuch as the first section of the statute, notwithstanding its general language, was designed to act only upon parties, *who, at the time of its passage,* were incompetent to testify in their own suits, the second section can fairly be limited in its application, and ought to be limited, to such parties only as were made competent witnesses solely by virtue of the first section in the act. Taking the two sections together, the word " parties," in the second section, cannot properly be made to include any other. The reasons, therefore, which are urged for the exclusion of the respondent cannot prevail.

*Exceptions overruled.*

CUTTING, J., did not concur.