HENRY D. HALL, administrator, in equity,

*vs.*

JOHN H. OTIS and others.

Androscoggin.    Opinion February 16, 1885.

*Trust funds.    Presumption.    Evidence.    Executors and administrators.*

Where one draws against a fund composed partly of his own money and partly of the money of another, the presumption is that the draft is from his own money, whatever were the relative dates of the deposit.

Where an administrator testifies to any fact happening before the death of his decedent, the adverse party is confined in his testimony to the same facts.

If it appears that the evidence excluded by a master at the hearing of a cause could have no legal weight to change the result, exceptions to the exclusion will not be sustained.

ON EXCEPTIONS.

Bill in equity to obtain a construction of the will of Daniel E. Hall and to obtain the property belonging to that estate.

The case has been before considered by the law court and is reported in 71 Maine, 326, where may be found a copy of the will and the construction placed upon it by the court. The case was then sent to a master, A. R. Savage, Esq. and the exceptions are to portions of his report and are sufficiently stated in the opinion.

*Bolster and Watson,* for the plaintiff, cited : Stat. 1873, c. 145 ; *Burleigh* v. *White,* 64 Maine, 25 ; *McLean* v. *Weeks,* 65 Maine, 424 ; *White* v. *Brown,* 67 Maine, 197 ; *Holmes* v. *Brooks,* 68 Maine, 416 ; *Berry* v. *Stevens,* 69 Maine, 290.

*N. and J. A. Morrill,* for the defendants, contended that the ruling of the master upon the bank account was erroneous. It was a continuous account of several items. The various deposits constituted the bank, the debtor of Annie E. Hall, and the several sums paid on her checks became payments on account of that indebtedness ; hence the rule applicable to all running accounts between debtor and creditor applies. Where there is no appropriation the first payment goes in liquidation of the oldest indebtedness. *McKenzie* v. *Nevius,* 22 Maine, 148 ; *Miller* v. *Miller,* 23 Maine, 22 ; *Cushing* v. *Wyman,* 44 Maine, 121 ; *Hersey* v. *Bennett,* 41 Am. R. 274.

Here the earliest indebtedness was for a deposit of funds which the master found were a portion of the estate of Daniel E. Hall. The checks were, therefore, from that fund and the money was received and used by Mrs. Hall in her lifetime.

The master erred in excluding portions of the deposition of Martha Jane Clark. The statute provides that when the representative party testifies to any facts legally admissible upon the general rules of evidence happening before the death of the party he represents, "the adverse party shall neither be excluded nor excused from testifying as to such facts." It seems to us that the phrase "such facts" relates to "facts legally admissible . . . happening before the death," as a class, and not to the bare facts testified to by the representative party. Otherwise the rule

would work injustice when, as in this case, Mrs. Clark had no knowledge of the facts testified to by the plaintiff, but did have knowledge of other facts happening before the death of Daniel E. Hall and legally admissible upon the general rules of evidence, which tended to support the defendant's case.

EMERY, J. This case has once been before the court, and an opinion given construing the will in 71 Maine, 326. The case was then sent to a master, to whose report exceptions are taken, and the case is again reported to the law court to dispose of the exceptions, and make some further orders in the case.

I. Annie E. Hall, legatee under the will of Daniel E. Hall, (see former report of the case) had a right to consume the estate of Daniel E. Hall, but what she did not consume was to go over. She, after the death of Daniel E. Hall, made deposits of money from time to time in an Auburn bank.

The master's report finds that the earlier deposits were from funds of the estate of Daniel E. Hall, but that the later deposits were not. Subsequently she drew out a portion of the total deposit, leaving a portion still in the bank, where it remained at the time of her death. If what she drew out were funds of the estate of Daniel E. Hall, they were consumed by her, and the funds of that estate were reduced that much. If what she drew out were her own funds, then the funds of the estate of Daniel E. Hall remaining unconsumed, were so much more.

There was no evidence as to which fund was drawn against, and the master fell back upon the presumption, and ruled that the amount so drawn out was to be considered as drawn from her own funds, and not from funds of the estate of Daniel. The respondents excepted to this ruling. Their position is, that the bank became indebted to Mrs. Hall for each deposit as soon as it was made, and that it made a payment on account each time it paid her check. The respondents claim that the payment made by the bank was to be considered a payment on the older item of indebtedness, or the older deposit. If this were a case between the bank and Mrs. Hall, such might be the applicable rule, but the bank is not a party here. This is not a case of

payment between debtor and creditor, as Daniel E. Hall was not a creditor of Mrs. Hall, and the presumptions as to such payments do not apply here. The question here is, what is the presumption when one makes a draft from a fund composed partly of his own money, and partly of money of another? We think the presumption is, the draft was intended to be made, and was made from the drawer's own funds. Of course the presumption can be overturned by evidence, but where there is no evidence, we think such is the presumption. The master does not expressly find that the deposits, not of funds of the estate of Daniel E. Hall, were of the funds of Mrs. Hall, but she deposited them in her own name, and nothing else appearing, they are to be presumed to be her own funds; we may regard them as such in passing upon this question. The master acted upon a correct presumption, and his report, so far, is not objectionable.

II. The complainant, the administrator upon the estate of Daniel E. Hall, testified before the master as to some facts happening before the death of Hall. The respondents offered the testimony (in a deposition) of Martha J. Clark, one of the respondents, as to other facts happening before the death of Hall. Such parts of her deposition as related solely to other facts happening before the death but not testified about by the administrator, were excluded, and were not considered by the master. This exclusion is another objection made to the report by the respondent.

At common law, Martha J. Clark, being a party and interested, could not have testified at all. The first act admitting parties to testify still wholly excluded a party from testifying, where the adverse party was the representative of a deceased party. That act, therefore, did not admit any part of Mrs. Clark's testimony. The next statute upon the subject, that of 1862, c. 109, only applied to matters after the death of the decedent.

The excluded testimony must be admitted, if at all under the statute of 1866, c. 9, now R. S., c. 82, § 98, p. 11. This statute provided that the representative party may offer himself as a witness, and testify to any facts legally admissible upon the

general rules of evidence, happening before the death of the decedent, and that when he does so, the adverse party shall neither be excluded, nor excused from testifying in reference to such facts. There is some difference in the wording of the two statutes which may be noticed. The former after permitting the representative party to " testify to any *facts* " happening after the death of the decedent, declares that, " in reference to such *matters* " the adverse party may testify. In the latter statute the opposite party is only permitted to testify " in reference to such *facts*." In the former statute, the representative may testify to any " facts " happening after the death. The adverse party may testify to " matters." In the latter statute, the adverse party is confined to certain *facts*, " such facts." What facts? We think the legislature meant to confine the adverse party to such facts, as the representative party had testified to. We do not think it was intended to permit the adverse party to go over all matters in his testimony, giving his own version without fear of contradiction, upon all the issues of the case, where the representative party has perhaps only testified to a conversation with such adverse party.

The representative party, under the general rules of evidence, could not give statements of his decedent, could not give the deceased party's version of the case upon any issue. That version is silenced by death. The version of the adverse party is silenced by law, that death may give him no advantage and present no temptation. There may be one or more facts happening before the death of which the representative has personal knowledge. He is allowed to testify as to those. It becomes fair then, that the adverse party should be permitted to testify as to those facts. It becomes fair, that the case should have even his unwilling testimony upon those facts. The statute so provides. Fairness requires no more. The statute is not clearly worded, but in view of that difference of the phraseology already noticed, and of the undue advantage which the opposite interpretation might give an adverse party, and the temptation it might subject him to, we think the correct interpretation of the latter statute is that the adverse party is confined to the specific facts testified to by the representative party.

III. Some portions of the deposition of Mrs. Clark, in reference to some matters happening after the death of Hall it is claimed were excluded by the master, and that exclusion is made another ground of objection to the report. We have carefully studied the deposition and the case, and we cannot see how the testimony of Mrs. Clark as to such matters could affect the result. They did not have sufficient bearing on any is·ue to be of any value. The respondents were not injured by the exclusion, and therefore there is no occasion to determine its correctness.

This disposes of the objections to the report, which we think should be accepted.

The respondent, Otis, as administrator of Annie E. Hall, claims an allowance out of the property in his hands belonging to the estate of Daniel E. Hall, ( represented by the complainant, ) for disbursements, services, &c. incurred by reason of the bringing of this bill. The bill was brought not only to obtain a construction of the will, but to obtain property alleged to belong to the estate of Daniel E. Hall. The process is adversary in its nature.

In the former decree, 71 Maine, 326, it was ordered that no costs should be taxed for, nor against, the respondents. The proceedings since that decree have been hostile. The complainant has been pursuing his remedy to recover property, and the respondent has been resisting, and resisting strenuously. We think the estate he represents should pay the expenses of that resistance, and that the estate represented by the complainant should not be charged with the expense of the efforts made to diminish it. If the respondent estate is not required to pay costs, that is the utmost its representative could expect, after the contest he has made. We think the claim should not be allowed.

> *The master's report is to be accepted, and final decree made at nisi prius, in accordance with the report, and this opinion.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.