HARRY C. WILSON
*vs.*
FLORENCE H. WILSON

Cumberland.    Opinion, March 14, 1961.

*Robert Preti,*
*Herbert Crommett,* for plaintiff.

*Elton Thompson,*
*Arthur Peabody,*
*Henry Steinfeld,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, SULLIVAN, DUBORD, SIDDALL, JJ. TAPLEY, J., did not sit.

SIDDALL, J. This is a bill in equity brought by the plaintiff as executor of the will of Charles N. Wilson, late of South Portland, against the defendant, widow of the deceased. The bill was started under the old rules of civil procedure, and after the findings and judgment on May 11, 1960, subsequent proceedings were conducted under the new rules. The bill was brought to enforce the performance of an ante-nuptial agreement entered into between the deceased and the defendant, and to enjoin the defendant from making any claim as widow of the deceased against his estate. The case was heard by a single justice. The bill was sustained and the defendant was ordered to perform the covenants and agreements made by her in the ante-nuptial agreement. She was also permanently enjoined from setting forth any claim as widow of the deceased against his estate. From this decree defendant appealed.

The defendant by her answer admitted that she entered into an ante-nuptial agreement with the deceased on April 18, 1956, but claimed that such agreement was obtained by duress, fraud, and intimidation and that the conditions of the agreement were never complied with by the deceased. The defendant admitted that she and the deceased were married on April 26, 1956, and that he died on June 21, 1958. The defendant also admitted that she had filed in the Probate Court for Cumberland County a statutory waiver of the provisions of the will and codicil of the deceased and

was claiming her statutory rights as the widow of the deceased. It was stipulated by the parties that under the terms of the will of the deceased, his estate was devised and bequeathed to the plaintiff Harry C. Wilson, son of the deceased, and that under the terms of a codicil to said will, the testator's home on Lawn Avenue was devised to the defendant.

The issues framed in the pre-trial order prior to the hearing below were as follows:

1. Whether or not the ante-nuptial agreement was obtained by the deceased by duress and intimidation.

2. Whether or not the agreement was obtained by the deceased by fraud.

3. Whether or not the consideration for said agreement has been fully complied with.

The only witness for the plaintiff was the wife of Harry C. Wilson, the plaintiff executor. Over objection of the defendant she was allowed to testify as to events that occurred during the lifetime of the deceased. The defendant claims that this testimony was not admissible under R. S., 1954, Chap. 113, Secs. 114-119.

It is noted that a clear and exhaustive article by Bradford H. Hutchins, Esq., of the Maine Bar, on the history and analysis of what is now the foregoing legislation is printed in Vol. 40 of the records of the Maine Bar Association.

In civil suits at common law, not only the parties but all others having a certain and direct interest in the event of the suit, however small, were excluded from testifying. Also, at common law a husband and wife were excluded from being witnesses for or against each other. *Murray* v. *Joyce*, 44 Me. 342, 347; *Walker* v. *Sanborn*, 46 Me. 470, 471, 472.

These strict rules of the common law have from time to time, in this jurisdiction, been liberalized by legislation. Such legislation in effect at the time of the hearing of the case below, and now in effect, is found in R. S., 1954, Chap. 113, Sec. 114, which provides:

"Parties, husbands, wives and others interested as witnesses — No person is excused or excluded from testifying in any civil suit or proceeding at law or in equity by reason of his interest in the event thereof as party or otherwise, *except as hereinafter provided*, but such interest may be shown to affect his credibility, and the husband or wife of either party may be a witness." (Emphasis supplied.)

This provision, subject to the exception referred to therein, abrogated the common law rule of exclusion of the testimony of parties, interested persons, and that of the husband or wife of either party. We are not concerned in this case with the question of confidential communications between husband and wife.

The exception referred to in R. S., 1954, Chap. 113, Sec. 114, is found in the first paragraph of Sec. 119 of the same chapter, which reads as follows:

"Not applicable to executors, administrators or heirs, save in special cases.—The 5 preceding sections do not apply to cases where, at the time of taking testimony or at the time of trial, the party prosecuting or the party defending, or any one of them, is an executor or an administrator or is made a party as heir of a deceased party; *except* in the following *cases:*" (Emphasis supplied.)

A qualification to this provision, pertinent to the issues of this case, is found in Subsection II thereunder. The provisions of Subsection II allow testimony of either party of facts admissible upon general rules of evidence, happening after the death of the deceased. As to facts happening be-

fore such death, the personal representative of the estate of a deceased person may testify as to any facts, admissible under the rules of evidence, and when such person so testifies, the adverse party is neither excluded nor excused from testifying in reference thereto. In cases coming within the meaning of this subsection the personal representative is the only person who can open the door to the allowance of testimony on the part of the other party to the suit, sometimes called the living party, as to facts happening prior to the death of the deceased. In the absence of testimony on the part of the personal representative as to such facts, the other party is incompetent to testify thereto. In the event that the personal representative does testify thereto, the other party is confined in his testimony to the specific facts testified to by the representative party. *Hall* v. *Otis,* 77 Me. 122, 126. The reason for the rule is that in those cases where death has closed the mouth of one party, the law seeks to make an equality by closing the mouth of the other. *Tobey, Jr. et al.* v. *Quick,* 149 Me. 306, 309, 101 A. (2nd) 187.

The law does not exclude the testimony of an interested witness, but only that of a party in cases where the other party is deceased.

" 'The statute of this State includes only parties to the action.' *Hospital v. Carter,* 125 Me. 191, 193. An interested witness can testify. *It is only a party who cannot, in cases where the other party is deceased."* *Tobey, Jr. et al. v. Quick, supra.* (Emphasis supplied.)

In *Walker* v. *Sanborn, supra,* the question was whether the widow of the person whose executor brought this action was rightfully admitted as a witness. In construing R. S., 1857, Chap. 82, Sec. 83 (now R. S., 1954, Chap. 113, Sec. 119), the court said:

"It has in some cases been contended that a widow, if interested in the estate, and all other interested

witnesses, are necessarily excluded when the suit is by or against an executor or administrator, by the provisions of the 83d Sec. of c. 82. It is true that, by that section, the general provision for the admission of all persons, whether parties or otherwise interested, is not to be applied to any *'cases'* where either party is an executor or administrator.

If by the word 'cases' we are to understand *suits* in court, then the language is broad enough to exclude all interested witnesses in such suits, and to restore the old law of exclusion as to such witnesses. But when we look at the prior legislation, we are satisfied that a more limited construction of the term must be given, to carry out the intention of the Legislature.   *   *   *   *   *   *   *

The construction we give to the word 'cases,' in the 83d section, is, that it does not mean suits or causes in court, but that the meaning is better expressed by the word *instances;* and the provision is to be limited to the case, or instance, where the plaintiff or defendant offers himself as a witness. The exclusion does not embrace, in a general designation, all causes or suits, and all the witnesses in them where the record shows an executor or administrator as a party; *but only reaches the case where, in such suits, one of the parties to the original cause of action is dead, and the other attempts to give what may be called ex parte testimony."* (Emphasis ours.)

Under the statute in cases such as this a wife cannot testify as to facts happening before the death of the deceased to which her husband could not testify. Unless the door is opened by the personal representative, the husband or the wife of the other party is not a competent witness. See *Tuck* v. *Bean,* 130 Me. 277, 278, 155 A. 277; *Hallowach Admrx* v. *Priest,* 113 Me. 510, 512, 95 A. 146; *Hubbard* v. *Johnson,* 77 Me. 139, 142; *Berry, Executor* v. *Stevens,* 69 Me. 290, 293; *Hunter, Executor* v. *Lowell,* 64 Me. 572; *Jones* v. *Simpson,* 59 Me. 180.

We are unable to find any case in which our court has been called upon to determine whether the wife of a personal representative is a competent witness as to facts occurring before the death of the deceased. Bearing in mind the purpose of the statute, and the general principles set forth in our decisions, we are satisfied that it was not the intention of the legislature to exclude such person as a witness. Her situation is quite unlike that of the wife of the other party to the suit, who, by the statute, is rendered incompetent as a witness. This incompetency is passed along to his wife. The personal representative, however, is not an incompetent witness, but may, if he chooses, give testimony as to any fact admissible under the general rules of evidence. His wife, however interested she may be in the outcome of the case, should be under no more disability to testify than other competent witnesses. Such a rule, as is true of many rules, may sometimes work an injustice, but we are satisfied that it operates in the interest of justice in the great majority of cases.

The ruling of the justice below admitting the testimony of the wife of the plaintiff was correct.

The defendant claims that the plaintiff must allege and prove that the deceased was ready and willing to perform all agreements on his part under the ante-nuptial agreement, and that a partial failure of the monetary consideration is sufficient to vitiate the entire agreement.

> "Consideration. — An antenuptial settlement or agreement to the extent that it is executory must be supported by consideration, but marriage itself is consideration for such a settlement or agreement, and indeed, it is said to be perhaps the most valuable and highly respected consideration of the law in this as well as other cases. This is true even where the parties had theretofore lived in illicit relations with each other. Marriage, however, is distinguishable from other valuable considerations

in that it is not capable of being reduced to a value which can be expressed in dollars and cents, and also in that, after the marriage, the status cannot be changed by setting it aside or by rescinding or canceling it, and hence the parties cannot be placed in statu quo, which necessarily results in peculiar application of rules as to specific performance." 26 Am. Jur., Sec. 277, p. 884, 885.

"Performance and Breach.—The general rule is that where parties enter into an antenuptial agreement, each must perform the terms and conditions of that agreement before he or she can claim the benefits to be derived therefrom. However, the rule that equity will not compel a rescission where there has been partial performance has been applied to a marriage settlement where the marriage has occurred, but the claim is made that other considerations, such as to be a kind and dutiful spouse, to use property for the joint benefit of the spouses, and to take care of the other spouse in old age, have not been complied with. It has been ruled that since marriage is a consideration that cannot be restored, covenants in a marriage settlement or agreement are independent, and failure of their performance by one party does not defeat his or her right to performance by the other party, if the former is willing and can perform or the latter has a right to damages for the breach, unless it is clear that the intention of the parties was otherwise, in which case such failure of performance defeats any right of the defaulting party to performance on the part of the other party. Where an antenuptial agreement, whereby one spouse releases rights in the property of the other, rests on a consideration additional to that afforded by the marriage, it has been held that the *total* failure of the additional consideration authorizes the assertion of the rights released by the agreement." 26 Am. Jur. Sec. 285, p. 891, 892. (Emphasis supplied.)

Whether promises are to be considered independent or dependent promises is one of intent and must be determined

by considering the language of the contract, the nature of the act required, and the subject matter of the contract. *Skowhegan Water Co.* v. *Village Corporation,* 102 Me. 323, 332, 66 A. 714.

Two of the matters which courts have deemed important in determining whether the stipulations are independent or dependent are (1) the order in time in which performance is to take place, and (2) the fact that on each side the promises go only to a part of the consideration and a breach may be compensated in damages or the injured party otherwise have a perfect remedy. *Hunt* v. *Tibbetts,* 70 Me. 221, 225, 226.

"In the nature of the case precise boundaries are impossible. The question that must be decided is whether on the whole it is fairer to allow the plaintiff to recover, requiring the defendant to bring a cross-action or counterclaim for such breach of contract as the plaintiff may have committed, or whether it is fairer to deny the plaintiff a right of recovery on account of his breach, even at the expense of compelling him to forfeit any compensation for such part performance as he has rendered. The decision of this question must vary with the special circumstances of each case. Nevertheless, some principles may be laid down. Where several promises are made by one party, a breach of one of them necessarily goes to only part of the consideration, but it may be a vital part, or it may be a minor part. A breach of a separate collateral promise of minor importance will not justify refusal by the other party to perform if the main promise to him has been or is being substantially performed. On the other hand, even though the breach occurs after part performance, if it is of such a material or essential character as to go to the root of the contract, further performance by the injured party is excused." WILLISTON ON CONTRACTS, Revised Edition, Sec. 841.

"The defenses of total failure and partial failure of consideration depend upon different principles.

> The defendant who pleads total failure denies the consideration. . . . . But the defense of partial failure admits the contract."
>
> *Judkins* v. *Chase, et al.,* 121 Me. 230, 232.

> "When there is a failure of a part of a lawful consideration the part which failed is simply a nullity and imparts no taint to the residue. . . . . if there is a substantial consideration left it will still be sufficient to sustain the contract."
>
> 17 C. J. S., Contracts, Sec. 130. See also 12 Am. Jur., Contracts, Sec. 360.

Where there are several independent promises, one party may bring an action without averring performance. *Lloyd* v. *Jewell, et al.,* 1 Me. 352, 357, 358.

The ante-nuptial contract was set forth in the bill of complaint and was admitted in evidence. What are the obligations of the parties thereunder? The marriage contemplated therein was consummated. That part of the contract, found by the court to be its most important condition, has been performed, and the consideration cannot be restored. Receipt of the sum of six thousand dollars was acknowledged by the defendant in the contract. She claims, however, that this payment was not actually received. A witness for the defendant testified that she was present at a time of a conversation between the defendant and the deceased in relation to this six thousand dollar item. The witness testified that the defendant stated in the presence of the deceased that she had received only thirty-three hundred dollars. She also testified that the deceased then told the defendant not to worry about it; that she would get it. The court in his decree referred to this testimony and found that taking all of the testimony in the case in its most favorable light for the defense it could be found as a fact that the monetary portion of the consideration of the contract was only partially satisfied.

The contract also contained reciprocal agreements that all property belonging to either party before marriage re-

mained his or her separate property and that each could dispose of such property without consent of the other. Nothing further remained to be done by either party in this respect, except, of course, neither party could effectively convey real estate without the release of the rights of the other. This was taken care of by mutual covenants requiring each to sign all necessary documents for that purpose. There is no evidence that the deceased in his lifetime was requested to sign such a document, but in any event, this covenant was enforceable by proper complaint in the event of a refusal to perform by either. An agreement in the contract that the deceased would make no claim as surviving husband against the estate of the defendant became inoperative on the death of the deceased. Paragraph 6 of the agreement reads in part: "It is further covenanted and agreed between the parties hereto that the giving and granting of the use of said property to said party of the second part [the defendant] for the term of her natural life and the payment to her of said six thousand dollars as aforesaid, shall be in lieu of all claims that the said party of the second part, as surviving widow, might have or make or claim in the estate of the said party of the first part, . . . ." As already stated, the payment of this sum of six thousand dollars was acknowledged in the instrument. However, the full amount thereof might not have been paid. The court below found ambiguity in the first part of the above covenant. The evidence in the case does not clear up the ambiguity, and the provision appears to be meaningless unless it refers to that part of the contract which provided that all property belonging to the defendant before marriage should remain her separate estate and could be disposed of without consent of the other party to the contract.

The justice below ruled that the most important condition of the contract was the marriage without which there could be no contract upon which the other conditions could be based. He further ruled that assuming a partial failure

of consideration in so far as the payment of six thousand dollars was concerned, that such partial failure was not sufficient cause for rescission and did not destroy the contract, particularly where the contracting parties performed the most important condition of the contract by entering into the marriage state.

No general rule can be stated that marriage is always the only consideration which goes to the root of an ante-nuptial contract. In some cases there may be one or more other considerations as important as that of marriage. Each ante-nuptial contract must be interpreted in the light of its terms and the surrounding circumstances. A careful reading of the contract and record in this case satisfied us that the marriage was the vital consideration of the contract, and that all other agreements therein were independent thereof, performance of which need not be alleged.

In effect the court ruled that the essence and main consideration of the contract was the marriage, and, the marriage having been performed, a partial failure of consideration in other respects did not vitiate this particular contract. The ruling of the court was correct.

We note that at the conclusion of plaintiff's case the defendant made two motions to dismiss. The court by the terms of his findings and judgment necessarily denied these motions. In the first motion the defendant relied upon the ground that the marriage was performed in New Hampshire, although the ante-nuptial contract recited that the parties contemplated marriage under the laws of the State of Maine. It is unnecessary for us to say more with relation to this motion than that the *fact* of the marriage was the prime consideration for the contract, and that the *place* of the marriage was of minor importance. The second motion was based on the general grounds that the plaintiff had shown no. right to relief. For reasons already given, this motion has no merit. Denial of both motions was proper.

Before turning to the question of fraud, duress, or intimidation, we discuss the defendant's contention that the testimony of a single witness without corroborative evidence is not sufficient to prove the allegations of a bill of complaint. She claims that her answer, so far as responsive to the bill, must be taken as true unless overturned by two witnesses, or by one witness with strong corroborative circumstances. The pleadings in this case were filed and the evidence was taken out under the old rules of civil procedure. An answer under oath was not required by the bill, and therefore, the answer does not operate as evidence. *Clay* v. *Towle,* 78 Me. 86, 88; Whitehouse's Equity Practice, Sec. 390.

We now proceed to a discussion of the question of fraud, duress, or intimidation in the procurement of the ante-nuptial contract, although technically this issue may not have been raised by the appeal pleadings in this case.

The defendant admits the execution of the ante-nuptial contract. She claims, however, that her signature thereon was obtained by fraud, duress, or intimidation. These are affirmative defenses, and the burden of proof is upon the defendant. This burden does not shift, but under certain circumstances a presumption of fraud may arise. In such event, the plaintiff has the burden of going forward with evidence showing the non-existence of the presumed fraud. An exhaustive presentation of the law relative to the evidential effect of presumptions is set forth in the case of *Hinds* v. *John Hancock Insurance Co.,* 155 Me. 349.

Where the provisions for the wife as survivor are clearly disproportionate to the husband's wealth, a presumption of fraud by designed concealment arises. In such event, the person claiming under the contract has the burden of presenting evidence tending to make the nonexistence of fraud as probable as its existence. Evidence which, if believed by the factfinder, tends to prove that there was "a full knowledge and understanding on the part of the wife at the time

of execution, of all the facts materially affecting her interest, viz.: the extent of his wealth and her rights in his property as his survivor, and how modified by the proposed agreement," will cause the presumption to disappear as an aid to the party who has throughout the burden of proving fraud. *Denison* v. *Dawes*, 121 Me. 402, 404; *Hinds* v. *John Hancock Insurance Co., supra.*

We recognize, however, that an ante-nuptial contract, under all of the circumstances existing in a particular case, may be so unconscionable that courts will not aid in its enforcement even if the prospective wife had full knowledge of the property affairs of the other party.

The contract and evidence disclose that the contract was entered into by parties of mature years, both of whom had been previously married and were the parents of grown children. The agreement recited that each of the parties thereto owned real or personal property, without stating the nature or value thereof, with provisions that such property should remain forever the property of the then owner, to be controlled by such owner as if he or she were unmarried, and that each would sign all necessary documents to transfer such property when sold by the other. Each, in effect, released any rights in the estate of the other by inheritance or otherwise. Under the agreement the defendant acknowledged the receipt of the sum of six thousand dollars as a further consideration. No evidence was introduced by either party to show the nature or extent of the property owned by the defendant at the time of the execution of the contract. However, testimony was introduced from which the court might reasonably have concluded that the deceased, prior to the execution of the contract, had informed the defendant of his financial worth, and that the defendant understood she was giving up her rights as widow in the estate of the deceased. Also, as bearing on the knowledge on the part of the defendant of the financial condition of the

deceased, the undisputed testimony indicates a very close association between the parties for many years prior to their marriage.

The justice below found no evidence that fraud, duress, or intimidation had influenced the signing of the agreement on the part of the defendant.

In actions tried upon the facts without a jury, findings of facts shall not be set aside unless clearly erroneous. Rule 52 (a) Maine Rules of Civil Procedure.

A review of the evidence fails to convince us that the above finding of the justice is clearly erroneous.

The entry will be

*Appeal denied.*