MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2016 ME 140
Docket:       Cum-15-504
Argued:       May 3, 2016
Decided:      September 6, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


SHARON BLANCHARD

v.

RONALD BLANCHARD


SAUFLEY, C.J.

[¶1]  Sharon Blanchard appeals from a judgment of the District Court (Portland, *Moskowitz, J.*) finding that a valid premarital agreement had been executed by the parties before their marriage and entering a judgment of divorce.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   On June 22, 1986, four days after executing a premarital agreement, Sharon and Ronald Blanchard were married.  The parties had two children, both of whom are now adults.  Twenty-six years after the marriage, in December 2012, Sharon filed for divorce.  Ronald responded, asserting that the parties had entered into a valid premarital agreement that governed the equitable distribution of property and the award of spousal support.  Highly

contentious proceedings continued for over two and a half years before a final hearing was held. During this time, prejudgment orders requiring Ronald to pay interim spousal support were entered. Ronald paid some of the ordered interim spousal support but did not fully comply with the orders.

[¶3] On August 24, 2015, the court held a bifurcated trial on (1) the validity of the premarital agreement and (2) the divorce complaint. After trial, the court found the following facts, which are supported by competent evidence in the record. Prior to their marriage in 1986, Sharon and Ronald requested that an attorney draft a premarital agreement in exchange for consideration. That attorney had previously represented Ronald in other contexts, and he made it clear to Sharon that he was representing Ronald only. At the time, Sharon and Ronald had been living together for about four years and were expecting a child.

[¶4] The attorney provided a financial disclosure form to each of the parties and requested that they provide full and complete information about their financial circumstances. The parties provided completed forms to the attorney, and the attorney began drafting a premarital agreement. The parties were then furnished with a copy of the proposed agreement.

[¶5]   Approximately six weeks after a draft of the agreement was provided to the parties, before the final agreement was executed, the attorney asked Sharon if she had consulted with independent counsel regarding the terms of the proposed agreement.  She stated that she had done so.  She also confirmed that the final agreement contained certain revisions to the original draft that she had specifically requested.

[¶6]   During the first part of the trial regarding the validity of the premarital agreement, the parties testified that at the time they signed the premarital agreement, Ronald's net worth was substantially larger than Sharon's, but Sharon was self-sufficient and supported herself.  The court entered in evidence the premarital agreement signed by the parties.

[¶7]  That agreement, executed on June 18, 1986, was written before the enactment of the Uniform Premarital Agreement Act, 19-A M.R.S. §§ 601-611 (2015), and it does not have the clarity of more recently drafted instruments. It states that Ronald desires to make provision for Sharon "in release of and in full satisfaction of all rights" which Sharon might have "by reason of the marriage, in the property which Ronald F. Blanchard now has or may hereafter acquire."  It further states that Sharon desires to accept the provision "in lieu of all rights which she would otherwise acquire, by reason of

4

the marriage, in the property . . . of Ronald F. Blanchard." In the event of divorce after a marriage lasting more than five years, the premarital agreement provides the following.[1] Ronald will repay Sharon "the principal amount of $2,100 plus 12% interest thereon computed from May 1, 1984," which represents money that Sharon loaned to Ronald. In addition, temporary spousal support "shall be paid" to Sharon. Furnishings are to be divided equally and each party is to keep his/her personal effects. Sharon has the right to select any automobile owned by the parties, but if it is subject to debt, Sharon alone will be responsible for the debt.

[¶8] The agreement also states,

Sharon Elaine Turgeon acknowledges that the present approximate net worth of Ronald F. Blanchard has been fully disclosed to her and she understands that such net worth is in excess of $750,000, that she has given consideration to this fact and others, and that she has had the advice of independent accounting counsel and independent legal counsel, and that having had such independent counsel, she chooses to enter into this Agreement freely and with full understanding of its provisions.

Attached to the agreement as appendices are complete lists of Sharon's and Ronald's assets held at the time of the agreement.

---

[1] An additional provision, not applicable here, addressed the parties' rights in the event that the marriage did not last for five years.

[¶9]   The court found that, when she executed the agreement, Sharon had a "full understanding of the parties' respective financial circumstances," had consulted with independent counsel, and had "more than a fair opportunity to fully understand and consider any marital rights she would gain" in Ronald's assets and how the agreement would modify those rights. Thus, the court gave full force and effect to the premarital agreement, and proceeded to try the other issues raised by the parties.

[¶10]   Regarding the spousal support and equitable distribution of property, Sharon sought repayment of a promissory note that Ronald had signed promising to pay back money that Sharon had loaned him in 2010. Sharon also sought payment of a spousal support arrearage, and Ronald admitted that he had not yet paid Sharon approximately $20,000 of court-ordered interim support.

[¶11]   The court noted that the premarital agreement had not been amended to include the 2010 loan that the parties testified to, and concluded that the loan would therefore not be enforced through the present action.  The court concluded that Ronald was required to pay Sharon $2,100 in satisfaction of the loan mentioned in the agreement plus 12% annual interest[2] and that

---

[2] We reject Sharon's argument that the court should have determined the amount due on the $2,100 loan using compound interest instead of noncompounding interest when the agreement was

the agreement permitted Ronald to credit any temporary spousal support already paid toward that obligation.[3] Thus, the court concluded that Ronald had fulfilled all of his obligations under the agreement, and it granted the parties a divorce in a judgment in which the terms did not require either party to pay support or further cash distribution to the other.[4] The judgment did not explicitly address the spousal support arrearage that Ronald had not paid to Sharon. Sharon appeals to us. *See* 14 M.R.S. § 1901(1) (2015); M.R. App. P. 2.

## II. DISCUSSION

### A. The Premarital Agreement

[¶12] Sharon argues that the court erred in failing to find that the premarital agreement is invalid and unconscionable. We review the court's factual findings for clear error. *In re Heather G.*, 2002 ME 151, ¶ 12, 805 A.2d

---

silent as to the type of interest to be used. *See Premier Capital, Inc. v. Doucette,* 2002 ME 83, ¶ 17, 797 A.2d 32 ("As a general rule, compound interest cannot be recovered where the parties do not expressly promise to pay it." (quotation marks omitted)).

[3] Sharon argues that pursuant to the agreement, only support paid within ten days of service of process of the complaint, rather than all interim support paid by Ronald, should have been credited toward Ronald's ultimate obligation, and thus Ronald had not fulfilled his obligations under the agreement. Because Sharon did not present that argument to the trial court, it has not been preserved, and we do not address the argument further. *See Morey v. Stratton*, 2000 ME 147, ¶ 9, 756 A.2d 496.

[4] The judgment did order Ronald to pay Sharon outstanding attorney fees that had been previously awarded in connection with a motion for contempt.

249.  We review "the legal determination of the [premarital] agreement's validity and enforceability de novo."  *Hoag v. Dick*, 2002 ME 92, ¶ 7, 799 A.2d 391.  We review de novo whether, based on the facts found by the trial court, an agreement is unconscionable.  *See Bedrick v. Bedrick*, 17 A.3d 17, 29 (Conn. 2011); *cf. Estate of Martin*, 2008 ME 7, ¶ 18, 938 A.2d 812 (de novo standard of review pursuant to the now existing Uniform Premarital Agreement Act, 19-A M.R.S. §§ 601-611).

[¶13]  The Uniform Premarital Agreement Act, 19-A M.R.S. §§ 601-611, was first passed in 1987, a year after the parties signed the agreement at issue here; thus, we analyze the validity of the agreement under common law principles as they existed in 1986.  *See Hoag*, 2002 ME 92, ¶¶ 9-10, 799 A.2d 391.  For a premarital agreement to be valid, "there shall be no fraud or imposition practiced," "full and complete disclosure shall be made," and adequate provisions shall be made for each spouse.  *Rolfe v. Rolfe*, 125 Me. 82, 83, 130 A. 877 (1925).  The burden of proof begins with the party seeking to invalidate the agreement.  *See id.*  When the party seeking to invalidate the agreement establishes that the agreement's provisions for [one] spouse are "clearly disproportionate to the [other spouse's] wealth," a presumption of fraud arises.  *Wilson v. Wilson*, 157 Me. 119, 131, 170 A.2d 679 (1961).  Once a

presumption of fraud is established, the burden of proof shifts to the party seeking to enforce the agreement to rebut the presumption of fraud by proving "fairness, notice, understanding and adequacy." *Rolfe*, 125 Me. at 83, 130 A. 877; *see also Estate of Martin*, 2008 ME 7, ¶¶ 10-11, 938 A.2d 812 (discussing the pre-UPAA "common law presumption of fraud").

[¶14] The court concluded that the agreement's provisions for Sharon were clearly disproportionate to Ronald's wealth. Ronald does not dispute this conclusion. Therefore, a rebuttable presumption of fraud arose, and the burden of proof shifted to Ronald to rebut that presumption. The court then went on to conclude that Ronald had successfully rebutted this presumption of fraud.

[¶15] Sharon argues that the court failed to make the necessary findings to allow it to conclude that the presumption of fraud had been rebutted. In its judgment, the court did not explicitly find that the agreement was "fair" or "adequate." Because no motion for additional findings was filed, we assume the court found facts to support these implied findings. *See Coppola v. Coppola*, 2007 ME 147, ¶ 25, 938 A.2d 786 ("[I]n the absence of a motion for further findings, we must assume that there was competent

evidence in the record, which the court considered, to support the . . . judgment."); M.R. Civ. P. 52(b).

[¶16] The court found that after living together for four years, the parties requested that an attorney draft a premarital agreement. Both parties fully disclosed their debts and assets to each other. A copy of the agreement was available to the parties at least six weeks before the agreement was executed. During this time, Sharon asked that specific changes to the agreement be made. Before signing the agreement, Sharon stated that she had met with independent counsel. These findings are supported by competent evidence in the record and support the required determination that Sharon had notice of and understood the agreement.

[¶17] In addition, the parties presented testimony and evidence to support the finding that at the time the agreement was signed, Sharon was employed and was earning a sufficient income to support herself. Ronald had been married and divorced previously. He did not want to marry again and agreed to do so only upon reaching the agreement at issue. The agreement provided for Sharon in a limited fashion. Upon divorce after more than five years of marriage, the agreement provided Sharon with repayment of a debt with 12% interest, unspecified temporary spousal support, all of her own

"personal effects" (including substantial amounts of jewelry), and a vehicle. These facts support the implied findings that the agreement was fair and adequate. Thus, the court did not err in concluding that the premarital agreement was valid.

[¶18] Even when a premarital agreement is otherwise valid, however, a premarital agreement, "under all of the circumstances existing in a particular case, may be so unconscionable that [we] will not aid in its enforcement even if the prospective [spouse] had full knowledge of the property affairs of the other party." *Wilson*, 157 Me. at 132, 170 A.2d 679. The party seeking to invalidate the contract on the ground of unconscionability—in this case, Sharon—bears the burden of timely raising the issue in the trial court proceedings and demonstrating that the contract in question is unconscionable. *E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278 (1st Cir. 1990). When the party with the burden of proof appeals from a judgment, "the appellant must show that the evidence compels a contrary finding." *Young v. Lagasse*, 2016 ME 96, ¶ 8, --- A.3d ---.

[¶19] Unconscionability can be considered through two lenses: procedural and substantive. *See Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶¶ 32-33, 870 A.2d 146 (Alexander, J., concurring) (discussing the

unconscionability of adhesion contracts requiring arbitration of disputes). Procedural unconscionability is analyzed based on the circumstances that existed at the time the contract was adopted, *Jay Cashman, Inc. v. Portland Pipe Line Corp.*, 559 F. Supp. 2d 85, 108 (D. Me. 2008), and generally refers to the exploitation of unequal bargaining power between the parties, *see Am. Airlines v. Wolens*, 513 U.S. 219, 249 (1995) ("[P]rocedural unconscionability is broadly conceived to encompass not only the employment of sharp practices and the use of fine print and convoluted language, but a lack of understanding and an inequality of bargaining power." (quotation marks omitted)); *Barrett*, 2005 ME 43, ¶ 32, 870 A.2d 146 (Alexander, J., concurring) ("[T]he defense of unconscionability may be asserted to a contract of adhesion 'exacted by the overreaching of a party.'"). "Substantive unconscionability or unfairness focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Barrett*, 2005 ME 43, ¶ 36, 870 A.2d 146 (Alexander, J., concurring) (quotation marks omitted); *see Bither v. Packard*, 115 Me. 306, 314, 98 A. 929 (1916).

[¶20] Here, the evidence presented to the court did not compel findings contrary to those reached by the court regarding unconscionability. Concerning the circumstances of the adoption of the agreement, the parties

testified that at the time the agreement was signed, both parties were independent and self-sufficient. Both parties wished to enter into the premarital agreement. As the court found, after Ronald's attorney drafted the agreement, Sharon had six weeks to review the agreement before it was executed. During that time, Sharon insisted that it be amended in certain specific and substantive ways. Sharon confirmed that the changes she requested had been incorporated in the agreement and stated that she had consulted with independent counsel before signing the agreement. With respect to the issue of substantive unconscionability, the final terms of the agreement were not so one-sided as to shock the conscience. Based on the evidence presented, the court was not compelled to make contrary factual findings. The facts that the court found support the conclusion that the agreement was not unconscionable.

B.    2010 Loan

[¶21]   Sharon argues that the court should have ordered Ronald to repay a 2010 business loan even though that loan was not included in the premarital agreement because the divorce statute requires the court to set apart each spouse's property and divide the marital property. *See* 19-A M.R.S. § 953 (2015).

[¶22]  "[P]eople may execute enforceable premarital agreements that apply in the event of a divorce." *Hoag,* 2002 ME 92, ¶ 15, 799 A.2d 391.  Here, the premarital agreement unambiguously states that it was executed in full release of any and all marital rights; thus, all statutory rights were released. The premarital agreement itself and the subsequently enacted UPAA allow individuals to amend a premarital agreement at any time.  *See* 19-A M.R.S. § 607.  Ronald and Sharon did not amend the premarital agreement.  Under the facts of this case, the court did not err or abuse its discretion in declining to enforce the 2010 loan as part of the divorce proceeding.  Sharon can pursue civil remedies if she seeks repayment of the loan.

C.     Unpaid Interim Support

[¶23]  Sharon now argues that the court also erred in declining to award Sharon the unpaid spousal support that Ronald identified during his own testimony.   She asks us to remand the matter to the trial court for reconsideration of the spousal support arrearage.

[¶24]  The court's judgment did not mention the spousal support still due.  It is unclear from the judgment whether the absence of an order requiring payment of that spousal support was intentional or represents an oversight by the court.  Sharon, however, did not file a motion for further

findings of fact that would have allowed the court to clarify or correct the judgment. *See* M.R. Civ. P. 52(b). The court had before it many facts from which it could have concluded that Sharon had received substantial personal property from Ronald during the marriage and substantial spousal support over many months following the filing of the complaint. We therefore assume that the court found the facts to justify a retroactive modification of Ronald's temporary spousal support obligations. *See Coppola*, 2007 ME 147, ¶ 25, 938 A.2d 786; *cf. Nadeau v. Nadeau*, 2008 ME 147, ¶¶ 56-57, 957 A.2d 108. On this record, we cannot conclude that the modification was an abuse of discretion. Thus, we do not disturb the court's judgment as written.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

John P. Simpson, Esq., Simpson Law Offices, Cumberland Foreside, for appellant Sharon Blanchard

Robert A. Levine, Esq., Portland, for appellee Ronald Blanchard

Portland District Court docket number FM-2012-1333
FOR CLERK REFERENCE ONLY