# United States Court of Appeals
## For the First Circuit

No. 20-1878

ANNIE ZHAO, individually and on behalf of all others similarly
situated,

Plaintiff, Appellant,

v.

CIEE INC.; COUNCIL ON INTERNATIONAL EDUCATION EXCHANGE, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. Lance E. Walker, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson, Circuit Judge
and Arias-Marxuach,* District Judge.

Sigmund D. Schutz, with whom Gregory P. Hansel, Randall B. Weill, Alexandra A. Harriman, Preti, Flaherty, Beliveau & Pachios, LLP, Joshua Fields and Kirtland & Packard LLP were on brief, for appellant.
Chad W. Higgins, with whom Robert J. Keach, Patrick I. Marass, Zack B. Brandwein and Bernstein, Shur, Sawyer and Nelson, P.A., were on brief, for appellees.

June 28, 2021

---

* Of the District of Puerto Rico, sitting by designation.

**Arias**, **District Judge**.    Appellant Annie Zhao was studying abroad in the Netherlands in March 2020 when the COVID-19 pandemic upended daily life.    In response to the pandemic, Appellees CIEE, Inc. and the Council on International Educational Exchange, Inc. (collectively, "CIEE"), Zhao's study abroad provider, cancelled the abroad portion of her program and made alternative arrangements for her to complete her coursework online.    On appeal, Zhao does not question the wisdom of cancelling this portion of her study abroad program.    Nor does she question the alternative arrangements made by CIEE to allow her to complete her course work online.    Instead, she questions the district court's decision to dismiss, for failure to state a claim, her complaint against CIEE for breach of contract because the company refused to provide a refund in lieu of experiences, excursions, activities, and services she would have otherwise enjoyed abroad absent the pandemic.[1]    The district court construed the contract to give effect to all its provisions and concluded no refund was due when the cancellation of a program occurs after it started. We affirm.

## Background

Zhao, a member of the Harvard College Class of 2021,

---

[1]    The district court also dismissed Zhao's claim for unjust enrichment.    Because she has not raised that issue on appeal, we consider it waived.    See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

paid CIEE for a Spring 2020 study abroad program at the University of Amsterdam in the Netherlands. Prior to the program's start in late January 2020, Zhao and other similarly situated participants signed the CIEE Program Participant Contract and Forum Methodology for Dispute Resolution Agreement ("Participant Contract"), which included the CIEE Terms and Conditions ("Terms and Conditions"). On March 11, 2020, the World Health Organization declared COVID-19 a pandemic and the United States Centers for Disease Control issued a Level 3 travel warning for Europe and Level 2 global travel advisory, and the United States Department of State issued a Level 3 global travel advisory. On March 12, 2020, CIEE notified the program participants of its plans to suspend the abroad portion of their study abroad programs and on March 15, 2020, it acted accordingly. To ensure that participants could still earn academic credit, CIEE migrated its on-site programs to online and distance-learning classes.  Zhao completed her program coursework online. Although initially equivocating about whether Zhao would receive any refund, CIEE ultimately did not provide her with one and instituted a no-refund policy for most students on April 1, 2020.

On June 11, 2020, on her behalf and of those similarly situated, Zhao sued CIEE in Maine Superior Court alleging that in cancelling their program, CIEE breached its contractual duty to them.  Zhao claimed they had a right to a refund for services not provided by CIEE because Paragraph 14 of the Participant Contract

states that "[i]n the unlikely event that a program is cancelled (due to low enrollment or any other reason), CIEE will refund all payments received but will have no further liability to participant." On July 6, 2020, CIEE removed the case to federal district court and filed a Motion to Dismiss, arguing that other clauses in the Participant Contract and Terms and Conditions exempted them from issuing refunds to participants.

On August 31, 2020, the district court granted the motion. It agreed with CIEE that other provisions of the Participant Contract and Terms and Conditions limited CIEE's contractual obligations to the participants, including Zhao, and dismissed the complaint. See Zhao v. CIEE, Inc., No. 2:20-cv-00240-LEW, 2020 WL 5171438, at *4 (D. Me. 2020).

### Standard of Review

We review de novo a district court's order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Newton Covenant Church v. Great Am. Ins. Co., 956 F.3d 32, 34 (1st Cir. 2020); see also Riggs v. Curran, 863 F.3d 6, 10 (1st Cir. 2017) ("In conducting this review, we accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor.") (quotation omitted). As part of this review, we consider the complaint's well-pleaded allegations and "documents sufficiently referred to" therein. Giragosian v. Bettencourt, 614 F.3d 25, 28 (1st Cir. 2010) (quotation omitted).

- 4 -

However, we "reject unsupported conclusions or interpretations of law." Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 79 (1st Cir. 2008) (internal quotation marks omitted).

**The Participant Contract Absolves CIEE of Zhao's Refund Claim**

Under Maine law, the elements of a breach of contract claim are: "(1) breach of a material contract term; (2) causation; and (3) damages."[2] Wetmore v. MacDonald, Page, Schatz, Fletcher & Co., LLC, 476 F.3d 1, 3 (1st Cir. 2007) (quotation and emphasis omitted). "When interpreting a contract, a court needs to look at the whole instrument." Me. Woods Pellet Co., LLC v. W. World Ins. Co., 401 F. Supp. 3d 194, 200 (D. Me. 2019), reconsideration denied, 2020 WL 3404728 (D. Me. 2020) (quoting Am. Prot. Ins. Co. v. Acadia Ins. Co., 814 A.2d 989, 993 (Me. 2013) (alteration omitted)). The whole instrument here refers to the Participant Contract as well as to the included Terms and Conditions, both of which Zhao signed. See Crowe v. Bolduc, 334 F.3d 124, 137 (1st Cir. 2003) (quoting Hilltop Cmty. Sports Ctr., Inc. v. Hoffman, 755 A.2d 1058, 1062 (Me. 2000)).[3]

---

[2] The parties agree that the contract is to be interpreted according to Maine law.

[3] Neither party argues that the Participant Contract and Terms and Conditions are separate contracts and the district court read the Participant Contract to include the Terms and Conditions. We pause to note that the Participant Contract (as far as the record shows) does not explicitly incorporate the Terms and Conditions by reference. However, the Terms and Conditions note that the "Participant Contract . . ., inclusive of these Terms [and]

Further, courts will "interpret a contract according to the plain meaning of its language, and will avoid any interpretation that renders a provision meaningless." Me. Woods Pellet Co., LLC, 401 F. Supp. 3d at 200 (quoting Richardson v. Winthrop Sch. Dep't, 983 A.2d 400, 403 (Me. 2009)). The interpretation of contractual language "is a matter of law for the court to decide." Fowler v. Boise Cascade Corp., 948 F.2d 49, 54 (1st Cir. 1991) (citing Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me. 1983)). If the language is unambiguous, then, under Maine law, the judge can interpret the contract as a matter of law to see if a breach occurred. See Am. Prot. Ins. Co., 814 A.2d at 993 (quoting Acadia Ins. Co. v. Buck Constr. Co., 756 A.2d 515, 517 (Me. 2000)). Whereas if the court finds the contractual language to be ambiguous, then "its interpretation is a question of fact for the factfinder." Id.

Recall that Paragraph 14 of the Participant Contract states that "[i]n the unlikely event that a program is cancelled (due to low enrollment or any other reason), CIEE will refund all payments received but will have no further liability to

_____

Conditions," is the controlling document for interpreting program policies. See Crowe, 334 F.3d at 137 ("[I]n the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purposes, and in the course of the same transaction will be considered and construed together.") (quoting Hilltop Cmty. Sports Ctr., Inc., 755 A.2d at 1062).

participant."    While Paragraph 14 explains when a refund may be issued due to program cancellation, the Terms and Conditions also contain a section addressing program cancellation.   The first paragraph of the "Program Cancellation" section of the Terms and Conditions provides for refunds in the event a program is canceled prior to its start:

> CIEE reserves the right to cancel a CIEE Study Abroad program due to insufficient enrollment or other factors beyond its control. . . . In the unlikely event that a program is canceled prior to the start of the program, due to low enrollment or any other reason, CIEE will refund all payments received but will have no further liability to participant.

(Emphasis added.)

The second paragraph of that same section sets out CIEE's obligations when an emergency requires cancellation of a program after its start and prior to the end of an academic term:

> If an emergency requires that a program be canceled following the program start date and prior to the end of an academic term, CIEE will make reasonable efforts to make alternative arrangements in order to allow students to complete their academic work, but cannot guarantee that full or partial credit will be obtained.  If alternative arrangements cannot be made, CIEE will make reasonable efforts to collect documentation of student work completed to date.  CIEE will share this information with the home institutions of students enrolled in the program so they will be able to evaluate, per home institution policies, whether to grant their students any, full, or partial credit for work completed.

(Emphasis added.)

- 7 -

Lastly, the Terms and Conditions provide that "in the case of conflict among . . . [CIEE's] policies," the Participant Contract, "inclusive of these Terms & Conditions, first applies. It is the sole responsibility of the student to become familiar with all CIEE and host institution policies."

Zhao bases her breach of contract claim on the fact that CIEE failed to fulfill its obligation to offer a study abroad experience to participants and, instead, migrated its programs into an online platform of lesser quality and without the true abroad experience including activities and excursions. She claims that under Paragraph 14 she and similarly situated students have an unambiguous right to receive compensation, in the form of a refund, for the difference in value between the services CIEE agreed to deliver and those she and the other students received after the program moved online.[4]

CIEE contends the district court correctly applied basic rules of contract interpretation to find the Participant Contract unambiguous. Hence, it properly looked to the Participant

_____

[4] Zhao also quibbles with some language from the district court opinion saying that her claim for refunds "rises and falls" upon the interpretation of Paragraph 14. She points out that even absent that provision she could have plead breach of contract for CIEE's failure to provide educational services as it promised. True or not, the district court was merely saying that Zhao's claim depends on how the court reads Paragraph 14, not that Zhao needed a refund provision to state a claim. We move on.

- 8 -

Contract's whole context and structure rather than reading Paragraph 14 in isolation. CIEE also claims that by signing the Participant Contract, inclusive of the Program Cancellation section of the Terms and Conditions, Zhao and other participants agreed to the modification of the study abroad program after its start date without any refund provision. To CIEE, the absence of a refund provision in the Program Cancellation section's second paragraph "unambiguously demonstrates that the parties did not intend for CIEE to provide a refund if a program is cancelled after its start date." After a de novo review of the district court decision and record, we agree.[5]

We start, as we always do, with the contract's plain language, which, remember, we interpret as a question of law. See Crowe, 334 F.3d at 136. A contractual provision in Maine is "considered ambiguous if it is reasonably possible" that the "provision [has] at least two different meanings." Id. at 135 (quoting Villas by the Sea Owners Ass'n v. Garrity, 748 A.2d 457, 461 (Me. 2000)). We conduct this review for ambiguity from the "perspective of 'an ordinary or average person.'" Id. (quoting

---

[5] In CIEE's brief and at oral argument, the company explained the practicalities of the no-refund provision. CIEE called itself a "pass through organization," which had prearranged payments to independent contractors for providing housing, transportation, food, and entertainment services to the students. CIEE could not recoup a refund on some of those services and therefore it did not pocket all of the money the company declined to refund.

Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (applying Maine law)). But even from that perspective, the contract unambiguously provides that Zhao could only expect a refund if the program were cancelled prior to the start of her study abroad experience.

Paragraph 14 certainly seems expansive at first glance. It calls for refunds "due to low enrollment or any other reason," but contractual interpretation does not start and end on reading one phrase in isolation. See id. at 137. The rest of Paragraph 14 provides support for the view that the provision is limited to events before a program begins. Aside from the "any other reason" descriptor, Paragraph 14 focuses on there being a "minimum number of participants" so that the program can move forward.

This interpretation gains support when we look to the more specific contractual provisions of the Program Cancellation section of the Terms and Conditions. See Buck Constr. Co., 756 A.2d at 517-18 (noting that more specific contractual provisions inform the meaning of more general language); Dow v. Billing, 224 A.3d 244, 250-51 (Me. 2020) ("[S]pecific terms and exact terms are given greater weight than general language." (quoting Restatement (Second) of Contracts § 203(c) (Am. Law Inst. 1981))). The first paragraph of the Program Cancellation section contains language mirroring Paragraph 14's "due to low enrollment or any other reason" clause. The Program Cancellation section's first

paragraph then adds the more specific limitation that refunds are available when "a program is canceled prior to the start of the program, due to low enrollment or any other reason." (Emphasis added.) The second paragraph of the Program Cancellation section discusses what occurs if a program is "cancelled following the program start date." (Emphasis added.) As quoted above, the paragraph does not provide for a refund in that instance, instead listing out how "CIEE will make reasonable efforts to make alternative arrangements" so that students can complete their coursework. This paragraph's silence regarding refunds when read in connection with the first paragraph's express limitation about refunds only permits a single interpretation; CIEE had no contractual duty to provide refunds to students, like Zhao, when, as here, the program cancellation occurred after the program's start date. Cf. Stone v. U. S. Envelope Co., 111 A. 536, 537 (Me. 1920) (agreeing to certain stock security rights implied that the contract did not provide for other stock participation); NLRB v. SW Gen., Inc., 137 S. Ct. 929, 940 (2017) (holding that "[t]he force of any negative implication . . . depends on context.")(quotation omitted).

In transitioning its programs to an online platform so that Zhao and other participants could complete their academic work, CIEE complied with the second paragraph of the Program Cancellation section and with Paragraph 14. CIEE acted accordingly

- 11 -

because the paragraph "did not create any binding terms [regarding refunds] that [CIEE] could have breached." Hirschfeld v. Athena Point Lookout, LLC, No. 1:18-cv-00203-GZS, 2018 WL 5848968, at *3 (D. Me. 2018) (citing Me. Mun. Emps. Health Tr. v. Maloney, 846 A.2d 336, 338 (Me. 2004) (dismissing a breach of contract claim because the contract did not create the duty to reimburse which defendant had allegedly breached)).[6]

The district court thus did not err when it held that Paragraph 14 was limited by other provisions of the Participant Contract, namely the unambiguous language in the Terms and Conditions' Program Cancellation section. More so considering that the Participant Contract and its addendums must be read together. See Crowe, 334 F.3d at 137. Therefore, CIEE did not breach the Participant Contract when it migrated Zhao and other participants' coursework online but did not issue refunds for undelivered services.

---

[6] Zhao also contends we should interpret the contract favorably towards her because it is an adhesion contract. See Barrett v. McDonald Invs., Inc., 870 A.2d 146, 150-51 (Me. 2005); Dairy Farm Leasing Co. v. Hartley, 395 A.2d 1135, 1139-40 n.3 (Me. 1978). However, where contractual language has an indisputable plain meaning, we need not adopt the reasonable expectations of the less powerful contracting party because both parties would have the same interpretation of unambiguous language. See Gove v. Career Sys. Dev. Corp., 689 F.3d 1, 7-8 (1st Cir. 2012) (quoting Barrett, 870 A.2d at 150-51); see also Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244, 1253 (8th Cir. 1994) (noting that "[a]lthough a bill of lading is a contract of adhesion, the language . . . is clear and we can only interpret it to mean what it says"); Crowe, 334 F.3d at 137.

**Other Arguments Related to Liability Limitation Clauses**

In its Motion to Dismiss, CIEE argued that certain paragraphs in the Participation Contract that limit CIEE's liability for injuries or losses resulting from pandemics, among other events outside of CIEE's control, supported its position that the contract unambiguously does not require CIEE to provide refunds after the start date of a study abroad program.[7]    In

---

[7]  Paragraph 18 of the Participant Contract provides that CIEE is not responsible for injury, losses, or damages due to causes beyond its direct control such as "epidemics":

> Without limitation, CIEE is not responsible for any injury, loss, or damage to person or property, death, delay, or inconvenience in connection with the provision of any goods or services occasioned by or resulting from, but not limited to, acts of God, force majeure, acts of government . . . <u>epidemics</u> or the threat thereof, disease, lack of access to or quality of medical care, difficulty in evacuation in case of a medical or other emergency, <u>or for any other cause beyond the direct control of CIEE</u>.

 (Emphasis added.)

Likewise, Paragraph 19 provides that a participant "understand[s] that perceived or actual epidemic . . . can delay, disrupt, interrupt or cancel programs" and they "agree to assume all risk of any such problems which could result from any such occurrences."

Lastly, Paragraph 23 explains that a participant will hold CIEE harmless for events outside its control, including "pandemics," which disrupt or result in the cancelation of study abroad programs:

> [U]understand[s] that perceived or actual events (such as, but not limited to, political turmoil / unrest, economic collapse, environmental issues, natural disasters, <u>pandemics</u>, epidemics, university strikes, terrorist events, governmental travel warnings, <u>and many</u>

- 13 -

response, Zhao posited that these liability limitations, if read to prohibit refunds, "creat[ed] an ambiguity . . . for the fact finder to resolve "when compared with Paragraph 14's broad refund language.   The district court agreed with CIEE.

We can once more rely on basic principles of contract law to demonstrate why these liability limitation paragraphs do not affect our interpretation of Paragraph 14 and the Program Cancellation section paragraphs.  As noted, in Maine law the more specific contractual language controls the more general.  See Billing, 224 A.3d at 250-51.  The liability limitation paragraphs discuss "loss," "assum[ing] all risk," and "hold[ing] harmless"; they say nothing about refunds.  Paragraph 14 and the Program Cancellation section, on the other hand, focus on refunds (as discussed above).  We therefore needed only to rely on those provisions and not the liability limitation paragraphs to have concluded that the Participant Contract and its Terms and Conditions unambiguously do not require CIEE to provide Zhao with a refund when her program was cancelled following the start date.

Continuing on, Zhao also avers that if these liability limitation paragraphs can be interpreted to permit CIEE not to

_____

other events outside CIEE's control, such as those described in paragraphs 18-19, 21-22) can delay, disrupt, interrupt or cancel programs. I agree to hold harmless CIEE from any such actual or perceived events.

(Emphasis added.)

refund her (as the district court concluded), they would constitute unenforceable liquidated damages provisions. Her opening brief suggested that we remand to grant her leave to amend her complaint so that she can seek declaratory judgment to that effect. However, in her reply brief and at oral argument, Zhao pivoted and disclaimed any independent assertion that the paragraphs were unenforceable liquidated damages clauses. Rather, she argued that the district court's interpretation of CIEE's refund responsibilities would lead to unreasonable results because those paragraphs would prevent aggrieved students from recovering in a whole host of situations not present here. In other words, she used the unreasonable result as a way to argue for her preferred interpretation of Paragraph 14. In any event, even if we permitted remand, Zhao would lose because the paragraphs cannot be liquidated damages clauses.

Maine law provides that liquidated damages compensate injured parties for damages suffered when a contract is breached. See Denutte v. U.S. Bank, N.A., 213 A.3d 619, 627 (Me. 2019). They are meant to indemnify the non-breaching party for the breaching party's actions. See id. at 628. The Participant Contract's liability limitation paragraphs hold CIEE harmless for a range of injuries associated with events outside of CIEE's control. They are not intended to make CIEE whole for breaches by participants. They do not compensate or indemnify CIEE if a participant breaches

- 15 -

the agreement or withdraws from a program. They are liability limitations, not liquidated damages clauses. The cases cited by Zhao are inapposite.

Zhao's opening brief also argued the district court's interpretation of the liability limitation paragraphs would make the contract unconscionable and thus unenforceable in a set of factual circumstances not present here (namely, if CIEE cancelled the program after day one). As with her claim regarding liquidated damages, Zhao's reply brief and her statements at oral appear to have waived any argument that the contract is unconscionable. But even if Zhao has not waived her claim, we see no reason to remand to permit Zhao to amend her complaint. For one, we once more note that these liability limitation provisions say nothing about refunds. For another, Zhao's contentions would fail as a matter of law.

There are two types of unconscionable provisions: procedural and substantive. The party alleging unconscionability bears the burden of establishing either type. See Blanchard v. Blanchard, 148 A.3d 277, 282 (Me. 2016). In Maine, "[p]rocedural unconscionability is broadly conceived to encompass not only the employment of sharp practices and the use of fine print and convoluted language, but a lack of understanding and an inequality of bargaining power." Id. at 283 (quoting Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 249 (1995)). There is no

evidence at the time they signed the contract that Zhao or any other program participant were subjected to "sharp practices" by CIEE or that they could not understand the contract. The relevant contractual language was not hidden in fine print. Nowhere is this clearer, as CIEE posits in its brief, than the top of the very first page of the Participant Contract, which includes the following language in bold: **"This form is important.  It includes terms and conditions and releases CIEE from liability.  All participants MUST sign this form."**  Furthermore, the parties' relative bargaining powers are insufficient standing alone to show procedural unconscionability because the record does not demonstrate that Zhao (the weaker party) signed the contract as a result of any "exploitation" or "undue influence" from CIEE. Kourembanas v. InterCoast Colls, 373 F. Supp. 3d 303, 321 (D. Me. 2019) (applying Maine law) (citing Restatement (Second) of Contracts § 208, cmt. d (unequal bargaining power not alone enough to set aside unfavorable contract terms)).

As to substantive unconscionability, Zhao claims it is unconscionable that the Participant Contract does not require refunds after the program start date because that interpretation would create a windfall for CIEE by retaining all payments made by participants.  Yet Zhao fails to evince how the Participant Contract is an agreement which is "so one-sided as to shock the conscience."  Blanchard, 148 A.3d at 283 (first quoting Barrett,

870 A.2d at 156 (Alexander, J., concurring) and then citing <u>Bither</u> v. <u>Packard</u>, 98 A. 929, 932 (Me. 1916) (noting that to void the contract as "unconscionable . . . shocking the conscience must be apparent.")).  The allocation of risk in the liability limitation provisions and in the refund provisions does not rise to the level of unconscionability.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Lloyd</u> v. <u>Sugarloaf Mountain. Corp.</u>, 833 A.2d 1, 4 (Me. 2003) (upholding liability release when the language "expressly spell[ed] out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." (quoting <u>Doyle</u> v. <u>Bowdoin Coll.</u>, 403 A.2d 1206, 1208 (Me. 1979))).

We see no reason that these liability limitation provisions affect whether Zhao can receive a refund under Paragraph 14 and we also see no reason to remand for her to seek declaratory judgment about liquidated damages clauses or unconscionability claims.

## CONCLUSION

For the foregoing reasons, we **<u>affirm</u>** the district court's dismissal of Zhao's complaint.  Each party to bear its own costs.