MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 142
Docket:      Ken-16-452
Argued:      May 9, 2017
Decided:     July 6, 2017
Panel:       SAUFLEY C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

PETER M. BECKERMAN

v.

RICKY CONANT et al.

ALEXANDER, J.

[¶1]  Ricky and Monica Conant appeal from a judgment entered by the Superior Court (Kennebec County, *Wheeler, J.*) following a three-day nonjury trial, finding that Peter M. Beckerman has a deeded right-of-way across their property over the existing paved driveway.  On appeal, the Conants argue that the court erred in finding that (1) a deeded right-of-way exists over their property and (2) the right-of-way is located over their paved driveway.  We affirm the judgment.[1]

---

[1]  The Conants also argue that if no deeded right-of-way exists we should decline to remand for determination of whether Beckerman has acquired a prescriptive easement because a prescriptive easement cannot be established as a matter of law given Beckerman's testimony at trial.  Because we affirm the trial court's decision that a deeded right-of-way exists, the argument for remand is not considered further.

## I. CASE HISTORY

[¶2]  After considering all of the evidence presented during trial, the court made the following findings, all of which are supported by evidence in the record.  Peter M. Beckerman owns a waterfront lot (the "Beckerman lot") on Great Pond in Rome.  Ricky and Monica Conant own an abutting waterfront lot (the "Conant lot").  Ricky Conant also owns a second lot—abutting the Conant lot—located between the Beckerman lot and a private access road called South Crane Lane.  That second lot is rented to its former owners, Bruce and Cynthia Pooler (the "Pooler lot").

[¶3]  Before June 5, 1975, the Beckerman lot, the Conant lot, and the Pooler lot were all owned by Nettie and Edwin Pooler.  The Beckerman lot had been acquired from Anthony and Violet Dulac in September 1971.  On June 5, 1975, Nettie and Edwin conveyed the Pooler lot to Bruce and Cynthia Pooler.  Three years later, on December 14, 1978, Nettie conveyed the Beckerman lot to Willard and Elizabeth Haskell.  Given the location of the Pooler lot, the newly created Beckerman lot did not have access to South Crane Lane.  The 1978 deed conveying the Beckerman lot to the Haskells included the following language:

> Together with a right-of-way as now used and laid out, in common with others, to pass and repass to said premises, and subject to

the obligation of the Grantees herein, along with other cottage owners in the area, to share in seasonal road maintenance.

[¶4]   The Haskells subsequently conveyed the Beckerman lot to Beckerman on September 2, 1988.  Nettie Pooler conveyed the Conant lot to Rodney Pooler in 1998, who then conveyed the lot to the Conants on August 8, 2005.  Ricky Conant acquired the Pooler lot in 2010 and has been renting it to Bruce and Cynthia Pooler.

[¶5]   In 2000, Beckerman filed a complaint against Bruce, Cynthia, Rodney, and Nettie Pooler seeking to establish the location of the boundaries among their properties.  The parties entered into a consent order, in 2002, that granted Beckerman a right-of-way over the Pooler lot from his lot to South Crane Lane.  Beckerman filed a motion for contempt on July 16, 2012, alleging that the Poolers and Conants were in violation of that consent order. Following an April 2014 hearing, by order dated May 21, 2014, the court (*Wheeler, J.*) denied that motion.  We affirmed that denial but vacated a separate portion of the court's order.[2]  *See Beckerman v. Pooler*, 2015 ME 80, ¶ 15, 119 A.3d 74.

---

[2]  We affirmed the denial of the motion for contempt but vacated the portion of the judgment determining that Beckerman did not have a deeded right-of-way over the Conant lot.  *See Beckerman v. Pooler*, 2015 ME 80, ¶ 15, 119 A.3d 74.  We held that resolution of the contempt motion did not call for the court to determine separately whether Beckerman had a deeded

4

[¶6]  Also on July 16, 2012, Beckerman filed the complaint underlying this appeal, seeking a declaratory judgment that he has a right-of-way over the Conant lot by deed or, in the alternative, by prescriptive easement.  The complaint also sought an injunction preventing the Conants from interfering with his right-of-way over the Conant lot.

[¶7]  The Conants counterclaimed, asserting one count of statutory nuisance pursuant to 17 M.R.S. § 2701 (2016), one count of common law nuisance, and one count of trespass.  The Conants later moved to dismiss their trespass claim, which the court granted on December 10, 2012.

[¶8]  A three-day nonjury trial was held on November 23-25, 2015.[3]  By a judgment dated May 12, 2016, the court found that Beckerman had a deeded right-of-way over the Conant lot, and it apparently determined that the right-of-way existed over the Conants' paved driveway.[4]  The court also (1) issued a permanent injunction prohibiting the Conants from interfering with that right-of-way, (2) denied the Conants' nuisance counterclaims, and (3) found

easement, which issue should have been litigated in a separate declaratory judgment action.  *Id.* ¶ 12.

[3]  The transcript of the testimony at the April 2014 hearing on the motion for contempt was admitted as evidence at the November 2015 trial.  The trial court observed that this action had essentially been stayed pending resolution of the 2012 contempt motion.

[4]  At page 6 of its decision, the court stated, "The Conants will have to share their driveway with Mr. Beckerman . . . ."

that any claim about whether the Conants had a right-of-way over the Beckerman lot had been abandoned. Because the court found that a deeded right-of-way existed, it did not address Beckerman's prescriptive easement claim.

[¶9] The court's determination that Beckerman had a deeded right-of-way resulted from its finding that the 1978 deed language at issue was ambiguous because it was susceptible to two different interpretations. The court found that the phrases "in common with others" and "to share in seasonal road maintenance" seemed to refer to the South Crane Lane right-of-way, while the phrase "to pass and repass to said premises" suggested a new right-of-way to access the Beckerman lot. Therefore, the court considered extrinsic evidence to determine the intent behind the 1978 deed language.

[¶10] In reviewing extrinsic evidence to determine the intent of the parties, the court stated that the intent was difficult to discern given that Nettie Pooler, the grantor, was deceased and the Haskells, the grantees, did not testify at trial. The court noted that the only admissible evidence on this question—Bruce Pooler's testimony that he had observed the Haskells and their service vehicles cross the Pooler lot to access the Beckerman lot—was

insufficient to allow it to determine the intent of Nettie Pooler in conveying the Beckerman lot to the Haskells. Given the lack of evidence, the court resorted to rules of construction and concluded that the parties would not have intended to convey a "landlocked" Beckerman lot with no access to South Crane Lane. The court further concluded that the right-of-way "as now used and laid out, in common with others, to pass and repass to said premises" was located over the Conant lot because that was the only lot that Nettie Pooler owned at the time she conveyed the otherwise inaccessible Beckerman lot to the Haskells.

[¶11] Beckerman moved to alter or amend the judgment, arguing that he had not abandoned his claim regarding whether the Conants had a right-of-way over his property, and requested that the court attach an exhibit specifically identifying the location of the deeded right-of-way. By order dated September 21, 2016, the court amended the judgment to clarify that the Conants had a right-of-way over the Beckerman lot only for ingress and egress from Great Pond for the purpose of launching boats. The order denied Beckerman's request to attach an exhibit to the judgment further identifying the location of the right-of-way on the Conant lot.[5] The Conants did not

---

[5] The order also denied the Conants' request for oral argument and Beckerman's contempt motion.

request further findings of fact, M.R. Civ. P. 52, following issuance of the original judgment or the amended judgment. The Conants timely appealed. *See* 14 M.R.S. § 1851 (2016); M.R. App. P. 2.

[¶12] The Conants argue that the court erred in concluding that Beckerman has a deeded right-of-way across their property. Specifically, they argue that (1) the language of the 1978 deed is unambiguous and does not confer a right-of-way across their property; (2) the presumption applied by the trial court, that the parties would not intend to land lock the Beckerman property, was improper because the property is not landlocked as a matter of law; and (3) if a deeded right-of-way exists, it is not over their paved driveway because nothing in the 1978 deed specifies the location of the right-of-way.[6]

## II. LEGAL ANALYSIS

[¶13] The scope of a party's deeded easement rights are determined from the language on the face of the deed. *See Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059. A court may consider extrinsic evidence only if the deed language is ambiguous. *Id.* Language is ambiguous when it is reasonably susceptible to different interpretations. *See River Dale Ass'n v.*

---

[6] The Conants assert that any existing right-of-way on their property would be over the ten-foot strip of land running from South Crane Lane to the boat launch that was once part of the Beckerman and Pooler lots. There is no support in the evidence in the record for this assertion, and it is not considered further.

8

*Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809.  Whether deed language is ambiguous is a question of law that we review de novo, while the trial court's determination of objective intent based on extrinsic evidence is a question of fact that we review for clear error.[7]  *Wardwell v. Duggins*, 2016 ME 55, ¶ 10, 136 A.3d 703.

[¶14]  "If the language of the deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution."  *McGeechan v. Sherwood*, 2000 ME 188, ¶ 24, 760 A.2d 1068.  "The parties' intent may be gleaned not only from the use of the land before the grant, but also the practical construction which the parties placed upon [the deed] by their conduct. . . ."  *Anchors v. Manter*, 1998 ME 152, ¶ 18, 714 A.2d 134.  "In the face of imprecision in a grant, the same types of extrinsic evidence that can be considered for the use of an easement are applicable to determine its location."  *Id.* ¶ 20 (emphasis omitted).

A.    Deeded Right-of-Way

[¶15]  The language at issue in the 1978 deed conveying the Beckerman lot states:

---

[7]  Because the Conants did not file a motion for additional findings of fact, we will infer that the court found the facts necessary to support its judgment if those inferred findings are supported in the record.  *See Blanchard v. Blanchard*, 2016 ME 140, ¶ 15, 148 A.3d 277.

Together with a right-of-way as now used and laid out, in common with others, to pass and repass to said premises, and subject to the obligation of the Grantees herein, along with other cottage owners in the area, to share in seasonal road maintenance.

[¶16] As the trial court concluded, the deed language at issue is ambiguous because it is susceptible to two different interpretations. *See River Dale Ass'n*, 2006 ME 86, ¶ 6, 901 A.2d 809. The phrases "in common with others" and "to share in seasonal road maintenance" could be construed as references to the South Crane Lane right-of-way, while the phrases "as now used and laid out" and "to pass and repass to said premises" suggest a new right-of-way to and from the Beckerman lot.

[¶17] Because the original parties to the conveyance did not testify, and given the limited evidence regarding the intent of the conveying parties, the trial court concluded that there was insufficient extrinsic evidence to determine the parties' intent. Resorting to rules of construction, *see McGeechan*, 2000 ME 188, ¶ 24, 760 A.2d 1068, the court determined that the parties would not have intended to convey a lot with no access to the property from South Crane Lane.[8] This conclusion is consistent with the rule of

---

[8] The Conants argue that the Beckerman lot was not landlocked as a matter of law because it had water access. Although this is true regarding an easement by necessity, which will not be found when water access is available, *see Amodeo v. Francis*, 681 A.2d 462, 466 (Me. 1996), in attempting to ascertain the intent of the parties, the court could infer the parties would not have intended to land lock the parcel between Great Pond and the Pooler lot without access to South

construction that ambiguities in a deed are to be resolved against the grantor and in favor of the grantee. *Cf. id.* ¶ 36.

[¶18]  In addition, the deed creating the Beckerman lot added the language "as now used and laid out" and "to pass and repass to said premises"—which was not contained in previous deeds—indicating an intent to create a new right-of-way to the property from South Crane Lane.

[¶19]  Therefore, the court did not err in determining that the 1978 deed language was ambiguous, with the ambiguity resolvable by concluding that the deed created a new right-of-way to access the Beckerman lot from South Crane Lane and a concurrent obligation to support maintenance of South Crane Lane.

B.    Location of Right-of-Way

[¶20]  Because the trial court properly determined that the 1978 deed created a right-of-way to access the Beckerman lot from South Crane Lane, we next examine the trial court's finding that the deeded right-of-way exists over the Conants' paved driveway.

---

Crane Lane.  Without access to South Crane Lane there would have been no way to access the Beckerman lot, other than by water, which the court was entitled to find was unlikely to have been the intent of the parties.  Construing the deed language to confer access to the Beckerman lot via South Crane Lane—rather than Great Pond—does not produce an absurd result. *See Taylor v. Hanson*, 541 A.2d 155, 158 (Me. 1988).

[¶21]   As discussed previously, the conveyance of the Beckerman lot from Nettie Pooler to the Haskells in 1978 left the lot with no access to South Crane Lane.  When Nettie Pooler conveyed the Beckerman lot to the Haskells, she owned only the Conant lot; she had conveyed the Pooler lot to Bruce and Cynthia Pooler three years earlier.   Although, as a result of the 2002 settlement, there is now access to the Beckerman lot over the Pooler lot, Nettie Pooler could not have conferred a right-of-way over the Pooler lot because she did not own it at the time she conveyed the Beckerman lot to the Haskells.   Therefore, any referenced right-of-way "as now used and laid out" in the deed conveying the Beckerman lot would necessarily have been over the Conant lot.

[¶22]   The court found that the right-of-way exists over the Conants' paved driveway to and from South Crane Lane, observing that "the Conants will have to share their driveway with Mr. Beckerman . . . ."  The court further stated that "the right of way over the Conant lot creates a loop back to South Crane Lane . . . which allows . . . vehicles to safely exit the Beckerman lot." Because the Conants did not move for additional findings of fact, we will assume that the court's explicit finding that the right-of-way exists over the Conants' paved driveway is supported by an implicit finding that the driveway

is the location of the right-of-way "as now used and laid out" in 1978, if that finding is supported by the record. *See Blanchard v. Blanchard*, 2016 ME 140, ¶ 15, 148 A.3d 277.

[¶23]  Rodney Pooler testified that the properties were connected "shortly after" the Dulacs acquired the Beckerman lot in 1962 when the boat ramp was installed. This was approximately sixteen years prior to the Haskells acquiring the lot.  The installation of the boat ramp connected the driveways forming a loop that allowed vehicles "to drive down, back the boat in, and then drive right out the other driveway."  Bruce Pooler acknowledged during his testimony that the Haskells would access the Beckerman lot using the paved driveway over the Conant lot from time to time.

[¶24]  Beckerman testified that the Haskells told him that they used "the loop" to access their camp.  Beckerman further testified that when he was the Rome town attorney he assisted Nettie Pooler and the Haskells with a legal matter regarding their properties, which means that the court could reasonably have inferred that he had occasion to see "the loop" as it existed when Nettie Pooler owned the Conant lot and the Haskells owned the Beckerman lot.

[¶25]   There is nothing in the record to suggest that the driveways forming "the loop" have changed since they were connected by the boat ramp, years before the Haskells acquired the Beckerman lot.  Based on the evidence in the record, the trial court could have inferred that the phrase "as now used and laid out," which appeared for the first time in the deed conveying the Beckerman lot to the Haskells, referred to the paved driveway portion of "the loop" on the Conant lot.

[¶26]   The trial court did not err when it determined that the right-of-way conveyed in the 1978 deed was over the existing paved driveway on the Conant lot.[9]

The entry is:

Judgment affirmed.

---

[9]   After the briefs and record in this appeal had been filed and were before us, Beckerman moved to correct the record pursuant to M.R. App. P. 5(e), to include exhibits admitted in the previous, April 2014, trial between the parties.  Although the parties stipulated to the inclusion of the transcript from the previous trial, they did not stipulate to the inclusion of the exhibits discussed in that transcript.  Therefore, the exhibits were not before the trial court in this matter and cannot be considered on appeal.  *See U.S. Bank N.A. v. Curit*, 2016 ME 17, ¶ 13, 131 A.3d 903.  Accordingly, we deny the motion.

Catherine R. Connors, Esq. (orally), and Jared S. des Rosiers, Esq., Pierce Atwood LLP, Portland, for appellants Ricky and Monica Conant

Alton C. Stevens, Esq. (orally), Marden, Dubord, Bernier & Stevens, P.A. LLC, Waterville, for appellee Peter M. Beckerman

Kennebec County Superior Court docket number RE-2012-63
FOR CLERK REFERENCE ONLY