STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. RE-2016-0054

Robert G. Engelhardt, Sr. and )
Simone A. Engelhardt, )
           Plaintiffs, )
            )
            )
            )
        v. )          **Opinion and Judgment**
            )
            )
Hugh Arnold Ross and )
Georgia M. Ross, )
           Defendants. )

## Introduction

This case presents a dispute over a lakeside right of way. Trial was held on August 21 and 22, 2017, at which Plaintiffs were represented by Attorneys Barry Mills and Zachary McNally, and Defendants by Attorney Michael Devine. Post-trial arguments have been submitted and the matter is in order for decision. The court thanks counsel for thorough and organized presentations both at trial and in their arguments.

## Factual Review and Analysis

The parties own adjacent lots with cottages on the north shore of a pond in Plymouth, Maine, referred to in Plaintiffs' deed as "Gray Pond" and in Defendants' deed as "Round Pond, also known as Gray Pond." Both lots were originally held by a man named Angus Dow and members of his family. Each was conveyed several times over the course of years, with title eventually vesting in the parties.

Defendants' property is the westerly of the parties' lots. The sequence of transfers by which it vested in them is as follows:

- Warranty deed from Angus Dow to Roger Dow, dated 2/24/1981 and recorded in the Penobscot County Registry of Deeds at Book 3161, Page 46 (Pl. Ex. 10);
- Warranty deed from Roger Dow to Lewis Dow, 11/4/1991, recorded at B. 4940, P. 25 (Pl. Ex. 11);
- Warranty deed from Lewis Dow to Robert A. Dow, dated 9/8/1997, recorded at B. 6532, P. 218 (Pl. Ex. 12);
- Municipal Quitclaim deed from the Inhabitants of the Municipality of Plymouth to Robert A. Dow, dated 9/11/2002, recorded at B. 8354, P. 61 (Pl. Ex. 14);
- Quitclaim deed from Robert A. Dow to Stanley E. Tusinski and Lisa M. Tusinski, dated 9/11/2002, recorded at B. 8354, P. 63 (Pl. Ex. 13); and

1

- Warranty deed from Stanley E. Tusinski, Jr., and Lisa M. Tusinski to Arnold Ross and Georgia M. Ross, dated 3/7/09, recorded at B. 11689, P. 326 (Pl. Ex. 15).

Plaintiffs' property comprises two contiguous parcels, a southerly one on the shore together with a wedge-shaped lot to its north. Plaintiffs' chain of title is therefore more elaborate than Defendants'. The southerly, shore, lot was first conveyed by warranty deed from Angus Dow to Elton and Betty Erskine, dated 12/28/1960, recorded at B. 1823, P. 124 (Pl. Ex. 1). The northerly, wedge-shaped lot was conveyed by Angus Dow to Elton Erskine by warranty deed dated 9/1/1969, recorded at B. 2223, P. 778 (Pl. Ex. 2). Thereafter, title to the two properties merged in a chain comprising the following:

- Warranty deed from Elton and Betty Erskine to Stanley and Eva Shorey, dated 5/7/1985, recorded at B. 3863, P. 211 (Pl. Ex. 3);
- Warranty deed from Stanley and Eva Shorey to Pamela F. Shorey, dated 9/8/1992, recorded at B. 5155, P. 362 (Pl. Ex. 4); and
- Warranty deed from Pamela F. Shorey to Robert G. Engelhardt, Sr., and Simone A. Engelhardt, dated 5/5/1994, and recorded at B. 5616, P. 322 (Pl. Ex. 5).

Both plaintiffs also own property immediately to the east of the lots at issue in this case (Df. Ex. 12), and Plaintiff Simone Engelhardt owns a large, irregularly shaped lot that borders on the property conveyed by the deed in Df. Ex. 12. The westward point of this lot is the tip of a wedge which almost reaches the shore; from that point, the lot extends north and eastward to the intersection of the Dow and North Shore Roads. The latter property is called "The Three Bears Lot." On it sit seasonal cabins Plaintiffs wish to rent to others at a profit. (The configuration of all properties at issue is depicted in Df. Exs. 18 and 18A.)

The parties' properties are reached through an irregular series of roads that join and intersect at angles dictated by topography rather than plan, all of which generally connect the shoreside settlement with the Rutland Road, which in turn connects with the main road. The dispute in this case arises out of imprecise property descriptions. One feature of the imprecision is the changing and uncertain designations of these roads, none of which were closely defined at the time of the deeds. Later, when 911 designations were required, all of the roads acquired names (but not dimensional definitions).

Plaintiffs claim a right of way over a passage, once muddy but now grassed over, extending between the parties' properties from the shore of the pond to an access road bearing the 911 designation "Dow Road." Testimony from several generations of owners and users established that the passage has in fact been used for years by Plaintiffs and their predecessors in title. The parties differ as to whether Plaintiffs' deeds grant them a right of way over the passage. Further, in the event Plaintiffs do not hold a deeded right of access, the parties disagree whether Plaintiffs and their predecessors in title used the passage by permission or as a matter of right.

The parties used the contested extension of the Dow Road without incident until Plaintiffs sought to sell the Three Bears Lot and advertised it as having shore access over the extension. Defendants believed this overstated Plaintiffs' rights of access,

2

which they viewed as permissive, and therefore took a number of steps to assert their exclusive control over the extension.

- **Deeded Right of Way**

In the deeds submitted in evidence, the term "camp road" appears to have been used to designate what context shows are different access roads in the area, specifically the Dow Road and the North Shore Road. (Similarly, as noted, the body of water on which the camps sit is variously designated as "Round Pond" and "Gray Pond.") Each ambiguous designation must be viewed in the context of the area topography as well as the series of descriptions in related deeds in order to determine exactly which road is meant by each designation. No interpretation can harmonize every feature of every deed; there are simply too many "camp roads," rights of way, lost monuments, and inconsistent and incomplete forms of description to permit such a definitive reading.

The parties have provided colorable, differing interpretations of the ambiguous terms in the critical deeds and of the rights of way they convey. To assess which readings are more persuasive, the court must analyze the ambiguous language in conjunction with extrinsic evidence. **Beckerman v. Conant**, 2017 ME 142, ¶ 9, 166 A.3d 1006. Here, the extrinsic evidence largely consists of historic usage.

Plaintiffs' reading is consistent with the words used in their conveyance. The deed by which they acquired both the lakeside and wedge-shaped lots, Pl. Ex. 5, includes two grants of rights of way. First, the second paragraph of the deed—by which the lakeside lot was conveyed—grants "a right of way from said lot running in a northerly direction to the Main Road leading from Plymouth to Troy..." The third paragraph conveys the northerly, wedge-shaped lot; continuing, the fourth paragraph reads, "[a]lso, a right or way over the road leading from said Camp Road to Gray Pond..." Plaintiffs assert the initial grant allows passage northward to the main road and the latter allows passage southward to the pond on the grassy extension of Dow Road.

Defendants counter with a reading that emphasizes differing references to roads in the description of the northerly parcel in paragraph 3 of the deed:

> *Beginning on the Easterly side of the road which leads to Gray Pond and begins at a large rock and electric light post on the side of the Camp Road, so-called...*

Defendants assert "the road which leads to Gray Pond" is the Dow Road. Thereafter, they argue that this language—"begins at a large rock..."—describes the terminus of the Dow Road, "on the side of the Camp Road," rather than describing the point at which the lot description begins. Under this reading, the "Camp Road" over which Plaintiffs were granted a right of way is the North Shore Road, which they must traverse in order to reach the main road. In furtherance of their reading, Defendants believe the rock and light post, which cannot now be found or identified, were situated on the side of the North Shore Road. Plaintiffs believe they once lay beside the Dow Road.

3

The court agrees that "the road which leads to Gray Pond" is the way now designated the Dow Road. Good drafting would have precluded two references to the same road in a single description, one "the road which leads to Gray Pond" and the other "the Camp Road, so-called." This imprecision undermines Plaintiffs' proposed reading.

The problem is not, however, resolved by Defendants' preferred reading. The North Shore Road does extend to a property on the shore of Gray Pond (see Pl. Ex.19) but the Dow Road, as extended at the time of Plaintiffs' deed, literally extended to the shoreline. Further, Defendants' proposed reading would grant Plaintiffs a right of way over the Dow Road but not over the North Shore Road, both of which they must traverse to reach the main road. The record did not illuminate what rights of passage shorefront owners actually had over either the Dow Road or the North Shore Road at the time the lots were conveyed. Presumably, passage was not unrestricted—otherwise, there would have been no need for a right of way of any kind from Plaintiffs' shoreside lot to the main road—but the extent of any restrictions was not addressed in the record and therefore cannot determine the court's reading of the problematic provisions in the deed.

The history of usage is helpful in interpreting the deeds. The record establishes that the parties' predecessors in title extended the camp road now known as the Dow Road from a point north of both properties along a line between them, all the way to the shore of Round Pond. The purpose of the extension was to allow access to the shore for disabled family members to swim, as well as for others to launch boats and otherwise use the shoreline for recreation. The existence of shore alterations that would now not be allowed without an environmental permit, together with testimony that the rest of the shoreline is generally marshy and not easily accessible for swimming, reinforce this conclusion.

Based on the deeds, the photographs, the survey materials, and the reminiscences of witnesses who have intimate historical familiarity with the two cottages and their uses, the court makes the following findings of fact:

1. The parties' predecessors in title, by agreement, established a right of way extending from the camp road now known as the "Dow Road," southward to the shore of Round Pond;
2. The southern terminus of the right of way is a visible opening in the vegetation at the shore of the pond;
3. The property line between the parties is the midpoint of the right of way;
4. The right of way extends 9 ½ feet to either side of the midpoint, thus burdening each landowner equally;
5. The purposes for which the right of way was established include swimming, launching watercraft, and other traditional lakeside recreational uses;
6. The persons by which the right of way may be used include the parties and their guests.

From these findings, the court concludes Plaintiffs have proved they have a deeded right of way to the water, as well as the length and width of the right of way and the purposes for which it was granted. *See* **Drummond v. Foster**, 107 Me. 401, 78 A. 470 (1910).

4

- **Right of Way by Prescription**

Plaintiffs argue further they have established by prescription the right to use the grassy extension of the Dow Road. The court concludes this argument has merit and provides an alternate basis for the relief Plaintiffs seek.

To establish a prescriptive easement pursuant to 14 M.R.S. § 812 (2009), Plaintiffs must prove (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. **Androkites v. White**, 2010 ME 133, ¶¶ 13-14, 10 A.3d 677.

Familial and friendly relations among the owners to these adjacent properties over the generations made the question of use as a matter of right versus permission academic until recently, and it is likely that no owner of any affected property gave the issue a second thought until the immediate controversy erupted. The weight of the evidence establishes, with particular emphasis being given to Plaintiffs' longer tenure in their property, that they have established all three elements. The contested use has been continuous for over twenty years, it has been exercised under a claim of right, and it was met with acquiescence until the immediate dispute arose.

Because Plaintiffs have established they hold a right of way both as specified in their deed and by prescription, judgment will enter in their favor on Count I of their complaint.

- **Nuisance**

17 M.R.S. § 2701 provides that "Any person injured in his comfort, property or the enjoyment of his estate by a common public or a private nuisance may maintain against the offender a civil action for his damages unless otherwise specially provided." The elements of a private nuisance at common law are:

> (1) "[t]he defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use," with intent meaning only that "the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow"; (2) there was some interference of the kind intended; (3) the interference was substantial such that it caused a reduction in the value of the land; and (4) the interference "was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land."

**Johnston v. Me. Energy Recovery Co., Ltd. P'ship**, 2010 ME 52, ¶ 15, 997 A.2d 741, *quoting* **Charlton v. Town of Oxford**, 2001 ME 104, ¶ 36, 774 A.2d 366.

Plaintiffs argue Defendants inflicted a private nuisance when they posted a no trespassing sign in the middle of the opening of the grassy extension to the shore of the

5

lake, blocked the grassy extension with vehicles, and otherwise made the use of the right of way inaccessible. The court agrees.

Plaintiffs' calculation of their damages based on the nuisance was not persuasive. They believe they lost rental income due to their dispute with Defendants but provided no documentation of, e.g., interested parties who declined to rent cabins on the Three Bears Lot because of the pending dispute. Likewise, Plaintiffs established they were inconvenienced by Defendants' blockage of the right of way but also effectively mitigated their damages by securing access to the lake through the hospitality of neighbors. Although Plaintiffs' testimony demonstrated their dispute with Defendants has been vexing and inconvenient, they are entitled only to minimal monetary relief.

## Judgment

Judgment shall enter in favor of Plaintiffs on Count I of the complaint, as follows:

1. Robert G. Engelhardt, Sr. and Simone A. Engelhardt have a right of way, established by deed and by prescriptive use, extending from the southerly end of a camp road in Plymouth, Penobscot County, Maine, called the "Dow Road," to the shore of Gray Pond (also known as Round Pond).

2. This right of way is appurtenant to the real estate described in a deed from Pamela F. Shorey to the Engelhardts, dated May 5, 1994, recorded in the Penobscot County Registry of Deeds in Book 5616, Page 322.

3. The right of way is the westerly half of a 19-foot-wide passage, the center line of which is the common boundary between the property described in the Engelhardts' deed and the property described in a deed from Stanley E. Tusinski, Jr., et. al., to Arnold Ross and Georgia M. Ross, dated March 2, 2009, recorded in the Penobscot County Registry of Deeds in Book 11689, Page 326. The passage constituting the right of way is a gravel road, now grassed over, situated between the two properties. Its southern terminus is an opening to the shore of Gray Pond. Its path is generally northerly, parallel to a line of trees on the Engelhardts' property, extending to the point where the northwest corner of the Engelhardts' property and the northeast corner of the Rosses' property meets the southern end of the Dow Road.

4. The right of way is for pedestrian and vehicular travel between the pond and Dow Road to facilitate swimming, fishing, launching and hauling boats, and other recreational activities incident to the use and enjoyment of a lakeside camp. The right of way exists for the benefit of the Engelhardts, their family members, and their guests.

5. Hugh Arnold Ross (also known as Arnold Ross) and Georgia M. Ross are enjoined from interfering with use of the right of way as specified in this judgment.

6. This judgment shall operate directly on the land.

Judgment shall enter in favor of Plaintiffs on Count II in the amount of $1,000, plus interest and costs.

The Clerk may incorporate this Judgment upon the docket by reference.

Dated: January 5, 2018

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 1-9-18

7