MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 36
Docket:        Ken-23-307
Argued:        March 6, 2024
Decided:       May 14, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, LAWRENCE, and DOUGLAS, JJ.

PETER M. BECKERMAN

v.

RICKY CONANT et al.

DOUGLAS, J.

[¶1]  Ricky and Monica Conant appeal from a judgment entered by the Superior Court  (Kennebec County, *Cashman*, *J.*) finding them in contempt and directing them to pay Peter M. Beckerman's attorney fees for violating an order that enjoined them from "blocking, impeding or in any way interfering with" Beckerman's deeded right-of-way over their driveway.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  This is the third time that these parties have come before us in connection with their ongoing dispute over Beckerman's use of a deeded right-of-way over the Conants' property.  While more details may be found in our earlier opinions, *see Beckerman v. Pooler*, 2015 ME 80, 119 A.3d 74 (*Beckerman I*); *Beckerman v. Conant*, 2017 ME 142, 166 A.3d 1006

2

(*Beckerman II*), the following summarizes the facts pertinent to the instant appeal.

[¶3] Beckerman and the Conants own abutting waterfront properties on Great Pond in Rome, Maine. *Beckerman I*, 2015 ME 80, ¶ 2, 119 A.3d 74. Ricky Conant owns a second property—formerly known as the Bruce Pooler lot—which abuts both the Beckerman lot and the Conant lot. *Id.* The Bruce Pooler lot is located between the Beckerman lot and South Crane Lane, a private access road leading from a public road to these properties. *Id.* The Beckerman lot, the Conant lot, and the Bruce Pooler lot are connected to South Crane Lane by a horseshoe-shaped driveway that runs across all three properties as roughly shown in Figure 1.[1]



*Figure 1*

---

[1] Figure 1 is offered for illustrative purposes only and is not part of the record in this case.

[¶4] At one time, the land that now constitutes the three lots was owned by the Pooler family. *Beckerman II*, 2017 ME 142, ¶ 3, 166 A.3d 1006. Before 1975, Nettie and Edwin Pooler owned the property encompassing what is now the Beckerman lot, the Conant lot, and the Bruce Pooler lot. *Id.* In 1975, they conveyed the Bruce Pooler lot to Bruce and Cynthia Pooler. *Id.* Three years later, in 1978, Nettie Pooler conveyed what is now the Beckerman lot to Willard and Elizabeth Haskell. *Id.* Because the lot conveyed to the Haskells did not have access to South Crane Lane, the 1978 Pooler-to-Haskell deed included the following language:

> *Together with a right-of-way as now used and laid out*, in common with others, to pass and repass to said premises, and subject to the obligation of the Grantees herein, along with other cottage owners in the area, to share in seasonal road maintenance.

*Id.* (emphasis added.) The Haskells conveyed the lot to Beckerman in 1988. *Id.* ¶ 4. The Conants purchased their lot in 2005 from Rodney Pooler (who had previously acquired the property from Nettie Pooler in 1998). *Id.* Ricky Conant acquired the Bruce Pooler lot in 2010 from Bruce and Cynthia Pooler, and leased it back to them. *Id.*

[¶5] In March 2000, before the Conants purchased any property in the area, Beckerman filed an action in Kennebec Superior Court against Bruce, Cynthia, and Rodney Pooler (who at the time collectively owned the other two

lots) to establish the location of the common boundaries of the three lots. *Beckerman I*, 2015 ME 80, ¶ 3, 119 A.3d 74.  The parties settled the action at mediation, resulting in the issuance of a consent order in 2002 that established the current boundaries of the three properties.  *Id.* ¶ 4.  As part of the settlement, Beckerman secured a right-of-way over the driveway on the Bruce Pooler lot in order to access South Crane Lane. *Id*.  As significant here, the consent order provided that "[t]his conveyance shall not in any way limit the deeded right-of-way in favor of the Beckerman lot" across what is now the Conants' lot. *Id*.

[¶6]  In July 2012, Beckerman filed a post-judgment motion for contempt in the 2000 Pooler action, alleging that the Conants—Rodney Pooler's successors-in-interest in the Conant lot—were in contempt of the 2002 consent judgment by impeding his use of the right-of-way over the Conant lot.  *Id.* ¶ 5. At the same time, Beckerman filed a separate action seeking "a declaratory judgment that he has a right-of-way over the Conant lot" and "an injunction preventing the Conants from interfering with his right-of-way."  *Beckerman II*, 2017 ME 142, ¶ 6, 166 A.3d 1006.

[¶7]  The court (Kennebec County, *Wheeler, J.*) denied Beckerman's motion for contempt because "the language of the consent order was ambiguous and was not clearly intended to recognize an easement in favor of

Beckerman over the Conants' driveway." *Beckerman I*, 2015 ME 80, ¶ 8, 119 A.3d 74. Beckerman appealed. *Id*. ¶ 6. We affirmed the court's denial of the contempt because the consent order "did not intend to affirmatively recognize that Beckerman had an enforceable easement over the Conants' lot." *Id*. ¶ 9. However, we concluded that the court "erred by reaching beyond the consent order to address the separate question of whether Beckerman had an easement by deed" and vacated that portion of the court's determination, "leaving that issue to be resolved in the separate declaratory judgment action." *Id.* ¶¶ 11, 15.

[¶8] On remand, after a three-day bench trial in the declaratory judgment action, the court entered a judgment on May 12, 2016, declaring that Beckerman has a deeded right-of-way over the Conants' "paved driveway" and enjoining the Conants from interfering with that right-of-way. *Beckerman II*, 2017 ME 142, ¶ 8, 166 A.3d 1006. The judgment provided, in relevant part, as follows:

> Judgment is entered in favor of plaintiff Peter M. Beckerman and against defendant Ricky Conant and Monica Conant on plaintiff's complaint. *Plaintiff Peter M. Beckerman has a deeded right of way over the entire paved drive located on defendants' property . . . for ingress to plaintiff's property . . . and egress from plaintiff's property to South Crane Lane*.
>
> Defendants Ricky Conant and Monica Conant, and their heirs, successors, and assigns, are *permanently enjoined from blocking, impeding, or in any way interfering with the right of plaintiff*, and his

heirs, successors, and assigns, *to use the right of way* described in the preceding paragraph.

(Emphasis added.)

[¶9]  Following the judgment, the parties filed several post-judgment motions, including a motion for a stay filed by the Conants and a motion for contempt filed by Beckerman.  The contempt motion, filed in August 2016, alleged that the Conants had violated the injunction by impeding and interfering with Beckerman's use of the right-of-way.  To support his claim, he submitted eight photographs depicting vehicles and other items parked in the Conants' driveway.

[¶10]  The court entered an order on September 22, 2016, addressing the post-judgment motions.  Specifically with respect to the parties' respective motions for contempt and a stay, the court ruled: "While [the other post-judgment] motions were under consideration, Mr. Beckerman filed a motion for contempt and the Conants filed a motion for a stay.  Beckerman's motion is premature and the Conants' request for a stay is denied."

[¶11]  In February 2019, Beckerman filed a third contempt motion against the Conants—the motion that gave rise to this appeal.  The February 2019 contempt motion alleged that the Conants have been "willfully and intentionally blocking, impeding and/or interfering with [Beckerman's] use of

. . . [the] right of way."  The Conants moved to dismiss the February 2019 contempt motion.  They argued, among other things, that the doctrine of res judicata—and specifically claim preclusion—barred the motion because it was based on the same conduct as the 2016 contempt motion, which had been previously addressed.  On October 31, 2022, the court (*Cashman, J.*)[2] denied the Conants' motion to dismiss the February 2019 contempt motion.

[¶12]  After a January 24, 2023, evidentiary hearing on the motion for contempt, the court issued a final order granting the motion on March 10, 2023, and finding the following facts:

- In June 2016, soon after the May 2016 Order, Beckerman attempted to access his property "only to find [the Conants'] vehicle, a trailer, and a portion of the removable dock system in the driveway, preventing his use of the right of way to enter with his boat and boat trailer."

- "Throughout the summer of 2016" the Conants "acted in a manner as to interrupt [Beckerman's] ingress and/or egress[,] partially or fully disrupting his access to his property."

- "Similar events occurred during the summer of 2017, although the level of obstruction was less intrusive than in 2016.  [The Conants] continued to park vehicles on both sides of the driveway, on the paved portion of the driveway, in a manner which diminished the viable area of passage."

- "During the off-season of 2017, [the Conants] stored portions of the dock on the driveway[,] which prevented service vehicles, hired by [Beckerman] to perform work on his property after a storm, from using the driveway for ingress and egress."

---

[2] Justice Cashman took over the case after Justice Wheeler retired, and the case was further delayed by the onset of the COVID-19 pandemic.

- The Conants' "method of parking vehicles on both sides of the paved driveway, thus being within the driveway, continued into the summer of 2018, 2019, 2020, 2021 and 2022."

[¶13] Ultimately, the court found that the Conants had parked vehicles and stored items on the paved driveway in a manner that "impedes [Beckerman's] right of way and makes it difficult if not impossible for him to pass at times," and the Conants "need not completely block the right of way to be in contempt of the order." Moreover, the court found that the Conants have the ability to comply with the terms of the 2016 judgment because they "have sufficient land and space to park their vehicles (and store items such as the dock pieces) [in] places other than on the deeded right of way." The court found the Conants in contempt of the 2016 judgment and imposed as a remedial sanction "reasonable attorney fees and costs incurred by [Beckerman] arising out of or in connection with this motion for contempt."

[¶14] The Conants timely filed a notice of appeal. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶15] The Conants press four issues on appeal. First, they contend that the Superior Court erred in determining that the terms of the 2016 judgment were sufficiently definite to hold them in contempt. Second, they argue that the

Superior Court's interpretation of the judgment deprives them, as owners of the servient estate, of the reasonable use of their own driveway and that their use, as a matter of law, cannot constitute a violation of the injunction. Third, they maintain that it was error for the court to consider evidence previously presented in connection with an earlier contempt motion because the doctrine of res judicata bars relitigation of factual matters previously litigated. Finally, they challenge the Superior Court's authority under M.R. Civ. P. 66(d)(3)(C) in awarding attorney fees in this case.[3]

## A.    Specificity of the 2016 Judgment

[¶16]  For a person to be held in contempt for violating a court order, the order must "inform the person in definite terms what duties the order imposes upon him." *Lewin v. Skehan*, 2012 ME 31, ¶ 19, 39 A.3d 58. An order must clearly describe the conduct it seeks to prohibit, but it need not list every possible way or method of committing the prohibited conduct. *See Banker v. Bath Iron Works Corp.*, 507 A.2d 602, 605 (Me. 1986); *see also Hornbeck Offshore Serv., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) ("The order

---

[3]  Beckerman filed a motion with this Court asking us to impose sanctions against the Conants pursuant to M.R. App. P. 13(f). We decline to do so and deny the motion. Although we conclude the Conants' arguments are unpersuasive, we do not find their arguments to be "frivolous, contumacious, or instituted primarily for the purpose of delay," M.R. App. P. 13(f), and therefore a sanction is not warranted. *See Hazzard v. Dodge*, 454 A.2d 838, 841 (Me. 1983) ("Generally, a claim is considered frivolous and intended for delay only when the claim is totally devoid of merit.").

must state its terms specifically; and describe in reasonable detail the act or acts restrained or required . . ., but . . . [the] court is entitled to a degree of flexibility in vindicating its authority against actions that, while not expressly prohibited, nonetheless violate the reasonably understood terms of the order." (citation, alteration, and quotation marks omitted)); *State ex rel. Girard v. Percich*, 557 S.W.2d 25, 40 (Mo. Ct. App. 1977).

[¶17]  We review a trial court's civil contempt order for abuse of discretion. *Wrenn v. Lewis,* 2003 ME 29, ¶ 13, 818 A.2d 1005.  The Conants urge us first to make a de novo determination that the language of the injunction in the 2016 judgment is too indefinite to support a finding of contempt by clear and convincing evidence.  Contrary to their arguments, we conclude that the language is clear, and the Superior Court did not abuse its discretion in finding the Conants in contempt.

[¶18] The 2016 judgment enjoins the Conants "from blocking, impeding, or in any way interfering with" Beckerman's right to use "the entire paved drive[way] located on [the Conants'] property" for ingress to and egress from his property.  That language is straightforward, clear, and specific.  The Conants nonetheless argue that the "critical and fatal flaw" in the court's contempt finding is that the 2016 judgment does not "precisely forbid [them] from temporarily parking or placing objects on the easement"; and, thus, they claim,

the court erred "when it held the Conants in contempt for engaging in that conduct." We disagree.

[¶19] The court did not find the Conants in contempt because they temporarily parked their vehicles in, or placed an item on, the driveway. Rather, the court found the Conants in contempt because they parked their vehicles or stored items on the driveway "in a manner that imped[ed] . . . and ma[de] it difficult if not impossible for [Beckerman] to pass at times," which the judgment clearly prohibits and the evidence at the hearing supported.

## B.    Use of the Servient Estate

[¶20] The Conants challenge the court's interpretation of the 2016 injunction to mean that the Conants "need not completely block the right of way to be in contempt of the order." They contend that this interpretation effectively grants Beckerman "the right to exclude the Conants from all reasonable use of their driveway, including use that does not actually impede Beckerman's limited right of ingress and egress." This, they contend, violates their rights as servient estate owners to make reasonable use of their property and "falls outside the bounds of Maine law concerning easements."

[¶21] Servient estate holders have the right to use their land in any manner as long as the use does not "materially impair" or "unreasonably interfere" with the dominant estate holder's use of the easement for its

intended purpose. *Flaherty v. Muther*, 2011 ME 32, ¶ 63, 17 A.3d 640 (quotation marks omitted). An easement that is expressed "in general terms is limited to a use as little burdensome to the servient estate as possible for the use contemplated." *Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 6, 910 A.2d 392 (quotation marks and alternation omitted). However, "[i]f the grant of an easement expressly details its specific boundaries . . . , the owner of the right of way is entitled to use the entire granted area, and is not limited to what is necessary or convenient." *Id*; *see also Kinderhaus North LLC v. Nicolas*, 2024 ME 34, ¶¶ 32-34, --- A.3d ---.

[¶22] The 1978 deed from Nettie Pooler to Willard and Elizabeth Haskell, Beckerman's predecessor-in-title, included a "right-of-way as now used and laid out" over what is now the Conant lot to allow the Haskells "to pass and repass" to their land. *Beckerman II*, 2017 ME 142, ¶ 3-4, 166 A.3d 1006. The 2016 judgment declared—and we affirmed—that the easement over the Conants' property established in the 1978 Pooler-to-Haskell deed was a "deeded right of way over the entire paved drive[way] located on [the Conants'] property . . . for ingress to . . . and egress from [Beckerman's] property to South Crane Road." *See id.* ¶¶ 19, 26. Thus, the court did not err in concluding, consistent with the plain language of the 2016 judgment, that Beckerman *may* use "the entire paved driveway" as needed to access his property.

[¶23] At the same time, "the holder of an easement may only exercise the rights granted in a reasonable manner, and cannot do more." *Mill Pond Condo. Ass'n,* 2006 ME 135, ¶ 6, 910 A.2d 392. Such rights are those that are "incidental or necessary to the reasonable and proper enjoyment of the easement." *Id*. (quotation marks omitted)*.* Thus, even though Beckerman enjoys the right to use any portion of the "entire paved drive" for ingress and egress to and from his property, he does not have the right to preclude the Conants from reasonable use of their driveway, including using it to park vehicles that do not block passage—and the Superior Court did not hold otherwise. In fact, the court expressly acknowledged that the Conants "are not necessarily in violation of the 2016 judgment every time they park a car in the driveway." What the 2016 judgment enjoined was the use of the driveway in any manner—for parking, storage, or otherwise—that "block[s], imped[es], or in any way interfer[es] with" Beckerman's right to use the driveway for ordinary ingress to or egress from his property.[4]

---

[4] The Conants posit a number of hypothetical scenarios that could be problematic unless their obligations under the 2016 judgment are defined more specifically. For example: What if they are forced to call an ambulance to their property and in doing so block the driveway? Or, what if a delivery truck parks temporarily in the driveway to unload items? It is unlikely that the Conants would be found in contempt under these scenarios, but more importantly, these facts are not before us. Common sense and reasonable cooperation between neighbors would go a long way in avoiding future conflict.

14

[¶24] This is consistent with our law governing easements, and the court did not err.

**C.    Evidence of 2016 Conduct**

[¶25] The Conants contend that the court erred by considering eight photographs previously submitted in connection with Beckerman's August 2016 motion for contempt as well as related testimony because, they claim, that evidence was barred by the doctrine of res judicata, specifically the doctrine of claim preclusion. The doctrine of claim preclusion "bars the relitigation of claims if[] (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *U.S. Bank, N.A. v. Tannenbaum*, 2015 ME 141, ¶ 6, 126 A.3d 734 (quotation marks omitted).

[¶26] Here, there was no valid final judgment entered with respect to Beckerman's August 2016 motion for contempt; nor was there even an adjudication on the merits of the motion. Rather, the court expressly determined the motion was "premature," effectively dismissing it without prejudice. The doctrine of claim preclusion simply does not apply in this instance. *See Penkul v. Matarazzo,* 2009 ME 113, ¶ 8, 983 A.2d 375 (stating that claim preclusion applies only when there is a decision on the merits in a prior

action); *Norton v. Town of Long Island*, 2005 ME 109, ¶ 18, 883 A.3d 889;

*see also O'Connor v. N. Okaloosa Med. Ctr.,* 152 So.3d 843, 845 (Fla. Dist. Ct. App.

2014) (holding that "where there is an absence of a prior final adjudication on

the merits, [claim preclusion] does not apply").

**D.     Attorney Fees under Rule 66(d)(3)(C)**

[¶27]  The Conants' final contention is that the court abused its discretion

in awarding Beckerman attorney fees as a remedial sanction pursuant to

Rule 66(d)(3)(C) of the Maine Rules of Civil Procedure.   They argue that

Rule 66(d)(3)(C) authorizes an award of attorney fees only when there has

been a showing of loss or injury that is compensable by fine, "for a sum of

money sufficient to indemnify the aggrieved party."

[¶28] Rule 66(d)(3)(C) provides:

> In addition to, or as an alternative to, sanctions imposed under
> subparagraph (A) or (B) of this paragraph,[5] if *loss or injury* to a
> party in an action or proceeding has been caused by the contempt,
> *the court may enter judgment* in favor of the person aggrieved for a
> sum of money sufficient to indemnify the aggrieved party and *to
> satisfy the costs and disbursements, including reasonable attorney
> fees, of the aggrieved party.*

(Emphasis added.)   By the Rule's plain terms, a court has discretion to enter

judgment where a party has suffered a "loss or injury."   An "injury" in this

---

[5] Subparagraphs (A) and (B) refer to "coercive imprisonment" and "coercive fine," respectively. M.R. Civ. P. 66(d)(3)(A)-(B).

context does not require a compensable, monetary loss. It can consist of a "violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *Injury*, Black's Law Dictionary (11th ed. 2019); *see also Lewis v. Lewis*, 2003 ME 26, ¶ 12, 817 A.2d 867 ("The words 'loss or injury' [in Rule 66(d)(3)(C)] refer to any loss or injury suffered by the moving party at the hands of the contemnor.").

[¶29] We have previously read Rule 66(d)(3)(C) as authorizing an award of attorney fees as a remedial sanction and we do so again here. *See Lewis*, 2003 ME 26, ¶ 12, 817 A..2d 867 (stating that "[w]e do not read Rule 66(d)(3)(C) so narrowly" and accordingly construe the rule to authorize an award of attorney fees as a remedial sanction without a showing of compensable loss)*; cf. Hamlin v. Cavagnaro*, 2016 ME 8, ¶¶ 16-17, 131 A.3d 365 (holding that Rule 66(d)(3) "permit[s] the court to award attorney fees in place of imposing punitive sanctions"). This is consistent with the purpose of Rule 66. *See* M.R. Civ. P. 66 Advisory Committee's Notes June 2, 1997 (stating that the purpose of Rule 66(d) is to "either . . . coerce obedience to an order of the court or to compensate a party injured by disobedience").

[¶30] Here, Beckerman suffered "injury"—the interference with his deeded easement rights—as a result of the Conants' contempt. In vindicating

his rights, Beckerman incurred attorney fees.  The Superior Court was well within its discretion to award him attorney fees under M.R. Civ. P. 66(d)(3)(C).

The entry is:

> Judgment affirmed.  Peter M. Beckerman's
> motion for sanctions is denied.

---

Nolan L. Reichl, Esq. (orally), and Julia B. MacDonald, Esq., Pierce Atwood LLP, Portland, for appellants Ricky Conant and Monica Conant

Alton C. Stevens, Esq., Kennebunk, and Peter B. Bickerman, Esq. (orally), Readfield, for appellee Peter M. Beckerman

Kennebec County Superior Court docket number RE-2012-63
FOR CLERK REFERENCE ONLY