# United States Court of Appeals
## For the First Circuit

No. 19-1826

NEWTON COVENANT CHURCH, GARRETT SMITH, CARMEN ALDINGER, ANDERS BROWNSWORTH, THOMAS DEVOL, HAROLD JONES, DORIS KELLOM, KRISTEN LUCKEN, ROGER MARK, ROSELIND PICARD, DANIEL ROMAINE, BEATRICE YANKEY,

Plaintiffs, Appellants,

v.

GREAT AMERICAN INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

Kimberly L. Wehle, with whom Miller Friel, PLLC, Robert J. Gilbert, and Latham & Watkins, LLP were on brief, for appellants.
Ashly Scheufele, with whom Barry S. Pollack and Pollack Solomon Duffy LLP were on brief, for appellee.

April 10, 2020

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  Plaintiffs Newton Covenant Church and its individual officers appeal from a judgment dismissing their breach-of-contract action against Defendant Great American Insurance Company.  We affirm.

I

Newton Presbyterian Church (NPC) is a member church of a national Presbyterian denomination known as the Presbyterian Church (USA) (PCUSA).  On January 15, 2017, a majority of NPC's members voted to withdraw from PCUSA and to affiliate with a non-Presbyterian organization: the Evangelical Covenant Church.  The withdrawing members called themselves the "Newton Covenant Church" (NCC).

On March 17, 2017, NPC and the Presbytery of Boston[1] brought suit in Suffolk Superior Court against NCC and those individuals chosen to act as its officers, alleging trespass and conversion.  According to the complaint, the NCC and its officers had succeeded in unlawfully exerting control over NPC real property, as well as NPC bank accounts, following a dispute over PCUSA's "progressive stances" on same-sex marriage and the ordination of gay, lesbian, bisexual and transgender ministers.  App. 41.  The complaint alleged that the "break-away" group had rejected the Presbytery's authority to resolve the ecclesiastical

_____

[1] The Presbytery of Boston governs PCUSA member churches in the greater Boston area.

schism, and instead conducted a "vote" not authorized under the PCUSA's Constitution. App. 42-43. Among other things, NPC and the Presbytery sought a declaratory judgment that NPC owned church property at 75 Vernon Street, in Newton, Massachusetts.

On March 23, 2017, the group known as NCC submitted documentation to the Secretary of the Commonwealth that resulted in changing the congregation's name from "Newton Presbyterian Church" to "Newton Covenant Church." It then submitted a notice to the Great American Insurance Company (GAIC) requesting a defense in the Suffolk Superior Court action under a $1 million Directors and Officers insurance policy (Policy). Acknowledging that the named insured under the Policy was NPC, not NCC, the notice asserted that NCC was, as a matter of law, the same legal entity as the named insured. App. 134-135. On April 26, 2017, GAIC sent a letter denying coverage.

On November 6, 2017, the Superior Court awarded partial summary judgment to NPC and the Presbytery of Boston. In a separate judgment, the court later declared that "NPC is the sole and exclusive owner of the property" in question and ordered NCC and its members to vacate the premises. App. 85. Accordingly, the Secretary of the Commonwealth restored the registered entity name to "Newton Presbyterian Church." App. 127. NCC's officers then filed Articles of Organization with the Secretary of the Commonwealth to create a new entity called the "Newton Covenant

Church."  On June 14, 2018, the parties reached a settlement agreement to dismiss the lawsuit with prejudice and to vacate the partial summary judgment order.[2]

On December 21, 2018, Plaintiffs NCC and its individual officers brought this action against GAIC for breach of contract, alleging that GAIC, as their insurer, failed to defend and indemnify them in the state court action.  The district court granted GAIC's motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

II

We review *de novo* an order granting a motion to dismiss. Rodi v. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While "a district court is generally limited to considering 'facts and documents that are part of . . . the complaint,'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524

---

[2] GAIC asserts that the plaintiffs "knowingly relinquished any right they might have had to file this lawsuit" when they signed the settlement agreement.  Brief of Appellee 19.  Because we affirm on the basis of the Policy, we need not determine the significance of this agreement.

- 4 -

F.3d 315, 321 (1st Cir. 2008)), it may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice," In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003).

An insurer must defend its insured "when the allegations in a complaint [against the insured] are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010). As relevant here, the Policy defines "Insured" to include both the "Organization" and "Insured Persons." Add. 12. "Organization" refers to "the entity named" in certain declarations, here the NPC, while "Insured Persons" includes, among others, "persons who were, now are, or shall be directors, trustees, [or] officers . . . of the Organization." Id. Plaintiffs assert that, at the time of the state court action, they qualified as "Insured[s]": the NCC as an "Organization" and the individual officers as "Insured Persons." App. 15-16.

Plaintiffs' allegations are not reasonably susceptible of an interpretation that would state a claim covered under the Policy. Although the Policy covers "legal fees . . . incurred in the investigation or defense of any Claim," it defines "Claim" to include only, as relevant here, a "civil proceeding . . . made against any Insured." Add. 11 (emphasis added). It is uncontested that the only "Organization" named under the Policy as an "Insured"

- 5 -

is an entity called "Newton Presbyterian Church."  Therefore, to the extent that NCC claims it was a distinct organization even prior to its separate registration with the State, it was not within the definition of an insured "Organization."  To the extent that NCC claims instead that it was a segment of the original NPC at the time of the state court complaint, coverage is barred for another reason: § IV.H of the Policy.  That provision, one of a handful of "Exclusions" under the Policy, precludes coverage for claims between insureds.[3]  See Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997) ("There is . . . no duty to defend a claim that is specifically excluded from coverage" under Massachusetts law).  And, finally, to the extent that NCC claims it was the original organization that had simply undergone a formal name change, once again that would implicate § IV.H's exclusion. As the district court observed, "the complaint alleges that NPC and NCC were, at best, the same entity."  Add. 30.  Because

---

[3] Section IV.H provides that: "This Policy does not apply to any Claim made against any Insured . . . by, or for the benefit of, or at the behest of the Organization or any Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or any Subsidiary, or any person or entity which succeeds to the interests of the Organization or any Subsidiary, provided, however, this exclusion shall not apply to any Claim brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the Organization, if any, in the event of Financial Insolvency." Add. 15 (emphases omitted).

"insureds would be on both sides of the litigation," id., the exclusion would apply.[4]

As for the individual plaintiffs who are current officers of the NCC, § IV.H of the Policy works a similar effect, given any of the alternative assumptions just discussed. Thus, because current NCC officers claim to have been "Insured Persons" as defined by the Policy, their claim must be that they were officers of the named insured, NPC, at the time of the state court action. If so, NPC would be in litigation against its own officers. Accordingly, the Policy expressly precludes claims of this nature.[5]

Affirmed.

---

[4] Because we affirm on the basis of this exclusion, we need not address plaintiffs' other contentions concerning the district court's alternative grounds for dismissal.

[5] It is also apparent from the underlying state pleadings that plaintiffs here were not sued for wrongdoing within the meaning of the policy. The Policy covers "Wrongful Act[s]" claimed against insured persons only when such persons are "acting in their capacity" with the "Organization," "solely by reason of their status" with the "Organization," or "arising out of their service" as officers of an outside entity, "but only if such service is at the request of the Organization." Add. 14. In state court, the NCC officers were sued not in any such official capacity as NPC officers, but as members of the "'Leadership Team' of NCC." App. 44-45. Indeed, the state pleadings described NCC as a "religious organization founded in early 2017 by former members of NPC" and clearly not at the request of NPC. Id. at 44 (emphasis added).